### Coy v. The Indianapolis Gas Company.

[No. 17,993.   Filed January 29, 1897.]

| | |
|---|---|
| 146 | 655 |
| 155 | 668 |
| 155 | 669 |
| 146 | 655 |
| 157 | 352 |
| 146 | 655 |
| 158 | 519 |
| 146 | 655 |
| 165 | 211 |
| 165 | 364 |
| 146 | 655 |
| 167 | 245 |
| 167 | 500 |
| 168 | 41 |
| 168 | 416 |
| 146 | 655 |
| 169 | 460 |

NATURAL GAS.—*Duty of Company to Furnish.*—*Breach of Contract with Consumer.*—*Tort.*—A natural gas company that has received a franchise to lay its pipes in the streets of a town and supply gas to the citizens thereof, owes a duty to serve all persons who make proper application for such service, and comply with such reasonable rules as may be fixed, and make such reasonable compensation as may be required; and where a contract has been entered into between such company and a consumer, such contract being but a statement of the reasonable conditions under which the company was required to perform its duty, the failure on the part of the gas company to perform such contract is a tort.

DAMAGES.—*Action in Tort.*—*Scope of Damages.*—*Proximate Cause.* —In an action in tort all damages directly traceable to the wrong done and arising without an intervening agency and without fault of the injured party are recoverable.

SAME.— *Complaint.*— *Sufficiency Of.*— *Death from Failure of Gas Company to Supply Fuel.*—*Proximate Cause.*—A complaint against a natural gas company engaged in furnishing gas, and which had contracted to supply plaintiff with gas for fuel, which alleges that defendant failed and refused to supply plaintiff with gas during cold winter weather, and after receiving notice from plaintiff of its failure to supply gas and of plaintiff's inability to procure fuel elsewhere, and of the sickness of his children, and which alleges that as a result of such failure plaintiff's house became cold and his children who were sick took a relapse from such sickness and died, is sufficient against a demurrer, and such failure on the part of defendant to supply fuel is held to be the proximate cause of the relapse and death of plaintiff's children.

From the Marion Superior Court. *Reversed.*

*Samuel Ashby,* for appellant.

*Miller, Winter & Elam,* for appellee.

HOWARD, J.—The sole error assigned on this appeal is that the court sustained a demurrer to appellant's complaint and to each of its two paragraphs.

It is alleged in the first paragraph of the complaint that the appellee is a corporation possessed of certain powers, immunities and franchises, among which are the right to lay pipes for the supply of natural gas in the streets and alleys of the town of Haughville, and the exclusive right to adjust, supply and handle all such pipes, together with mixers, repairs, connections and appliances necessary in supplying natural gas to consumers, and the exclusive right to manage, furnish, control and measure the supply of natural gas flowing through such pipes and other appliances to its various consumers in said town. That said consumers have no right in any way to interfere with or molest any of said pipes, connections, machinery or other appliances, or in any way to regulate, manage or control the flow of natural gas through any of said pipes, mixers or connections; that by reason of its said exclusive rights and franchises the appellee owed and owes a corresponding duty to appellant, with whom

Coy *v.* The Indianapolis Gas Company.

it entered into contract relations to supply him with
gas for fuel promptly and without reserve; and, by rea-
son of such contract and exclusive rights of appellee
to supply such gas, the appellee was in duty bound to
supply the same to appellant, and its failure so to do,
as hereinafter stated, was and is wrongful and unlaw-
ful and in violation of express duty due to appellant
and to his family; that by reason of such contract re-
lations a duty was and is created and is imposed by
law upon appellee to supply such gas to appellant
upon the performance by him of the conditions of said
contract on his part to be performed; that at the time
of entering upon said contract appellee knew that
said gas was a necessity and essential to the life of ap-
pellant and his family, and knew that appellant could
not obtain gas or fuel elsewhere, but depended en-
tirely upon appellee to supply the same; that at the
time of entering into the agreement to furnish gas as
aforesaid appellee was the owner of and operating a
natural gas plant in said town of Haughville, under
the laws of the State, and engaged in the business of
supplying natural gas for light and fuel to appellant,
to divers other persons, and to the public of said town;
that in December, 1892, appellee entered into a writ-
ten contract with appellant to furnish his residence in
said town with gas, at an agreed price, and on the
terms and conditions stated in said contract, in suffi-
cient quantity for fuel to heat said residence, appel-
lant paying for said gas in advance and agreeing to
notify appellee of any defect in such service and
supply of gas; that in December, 1892, appellant's
family consisted of himself, his wife and their two
children, all living in his said house in said town, one
of said children, Lou Ethel Coy, being then of the age
of five years; that in violation of said contract, and in

violation of its duty to appellant, appellee wholly failed, refused and neglected to supply said gas, and wholly failed, neglected and refused to perform the conditions of said contract on its part to be performed, and wrongfully and unlawfully failed, neglected and refused to discharge its said duty of supplying gas to appellant, and, in violation of said duty imposed by law and by said contract, wrongfully and unlawfully left appellant without fuel with which to heat said dwelling, all of which wrongful acts were done while said contract was in full force and while said duty rested upon appellee towards appellant to supply said natural gas. That appellant, relying upon appellee to comply with its said contract, and believing that appellee would discharge its said duty to appellant, failed to procure wood, coal, gas or other fuel; that during the severe weather in the latter part of December, while said contract was in full force, while said duty existed, and while appellant relied upon appellee to perform said contract and discharge said duty, and while appellant was unable to procure any other fuel to heat his dwelling, his said child, Lou Ethel Coy, being sick in said house, and after appellant had given to appellee due notice of its failure to supply gas to appellant, and of his inability to procure fuel elsewhere, and of the sickness of said child, and demanded such supply of gas from appellee, and after appellant had made every effort to procure fuel elsewhere, and while he was unable to obtain the same after diligent search, the dwelling of appellant became so cold and thoroughly chilled by the want of heat, that said Lou Ethel Coy, without her fault or that of appellant, and by reason of the failure of appellee to furnish gas, and by reason of the wrongful and unlawful refusal and failure of appellee to discharge its said duty to appellant, and by reason of the chilled condition of said

house and the low temperature therein, took a relapse in her sickness for want of heat and warmth, and became very ill and lingered in severe sickness in consequence thereof until the 31st day of December, 1892, when she died; the extreme sickness and death of said child being the immediate, direct and proximate result of the failure of appellee to supply said gas and of its refusal to discharge its said duty to appellant.

The second paragraph of the complaint is similar to the first, except that it counts on damages for the death, in like manner, of the other child of appellant.

Counsel differ as to whether the action disclosed in the complaint is one on contract or in tort. It is true, as a general rule, that no one is compelled to do business with any but those with whom he chooses. There are, however, well recognized exceptions to this rule. It has always been held that common carriers cannot, on tender of the usual compensation, refuse to accept for transportation proper articles offered at proper times and places. So, also, innkeepers having accommodations must receive as guests all who, in a peaceable and proper manner, make application therefor. In like manner it has been held that telegraph, telephone, water, gas and other like companies, that have received from public authority franchises which also provide for the accommodation of the general public, owe a duty to serve all persons who make proper application for such service, and who comply with such reasonable rules as may be fixed, and make such reasonable compensation as may be required. Persons or corporations enjoying such public franchises, and engaged in such public employment, are held, in return, to owe a duty to the public, as well as to all individuals of that public who, in compliance with established customs or rules, make demand for the beneficial use of the privileges and advantages due to

the public by reason of the aid so given by public authority. *Cent. U. Tel. Co.* v. *Fehring, ante,* 189; *Portland Nat. Gas & Oil Co.* v. *State, ex rel.,* 135 Ind. 54; *City of Rushville* v. *Rushville Nat. Gas Co.,* 132 Ind. 575, and note to this case in 15 L. R. A. 321. And that the public grant to appellee imposed also a public duty in return. See further the recent case of *Westfield Gas and Milling Co.* v. *Mendenhall,* 142 Ind. 538, and cases there cited.

In *Portland Nat. Gas Co.* v. *State, supra,* it was said: "That a natural gas company, occupying the streets of a town or city with its mains, owes it as a duty to furnish those who own or occupy the houses abutting on such street, where such owners or occupiers make the necessary arrangements to receive it and comply with the reasonable regulations of such company, such gas as they may require, and that, where it refuses or neglects to perform such duty, it may be compelled to do so by writ of *mandamus.*"

So it was said in *Williams* v. *Mutual Gas Co.,* 52 Mich. 499, 50 Am. Rep. 266, 18 N. W. 236, that, "When the defendant company made the connection of its service pipes and mains with the pipes and fixtures of the Biddle House, it imposed upon itself the duty to supply the house and premises, upon reasonable terms and conditions, with such amount of gas as the owner or proprietor might require for its use, and pay for, so long as the company should exist and do business."

And the Supreme Court of the United States, in *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650, said: "It is to be presumed that the legislature of Louisiana, when granting the exclusive privileges in question, deemed it unwise to burden the public with the cost of erecting and maintaining gas works sufficient to meet the necessities of the municipal government and the people of New Orleans, and that the

public would be best protected, as well as best served, through a single corporation invested with the power, and charged with the duty, of supplying gas of the requisite quality, and in such quantity as the public needs demanded."

The same high court, in *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396, said: "These gas companies entered the streets of Baltimore, under their charters, in the exercise of the equivalent of the power of eminent domain, and are to be held as having assumed an obligation to fulfill the public purposes to subserve which they were incorporated."

In 2 Beach. Priv. Corp., section 835 (d), the author says: "Gas companies, being engaged in a business of a public character, are charged with the performance of public duties. Their use of the streets, whose fee is held by the municipal corporation in trust for the benefit of the public, has been likened to the exercise of the power of eminent domain. Accordingly, a gas company is bound to supply gas to premises with which its pipes are connected. It may, however, impose reasonable conditions."

In the case at bar, the arrangements and reasonable conditions referred to in the cases cited, were all provided for by the contract between the parties. The agreement so entered into did not in any manner absolve appellee from the duty assumed under its franchise, but rather by its terms fixed the character and scope of the duty so assumed. Even without and before the contract, it was the duty of the company to attach its mains to appellant's house pipe, on being requested to do so by him, and on his compliance with the reasonable conditions imposed by the company. Nor would it be enough to make such connections without also supplying the gas therefor. Not a partial, but a full compliance with the company's duty is

required, and this without any discrimination as to persons having a right to the gas. *Cent. U. Tel. Co.* v. *Fehring, supra.* Whether, particularly after contract entered into to supply the gas, the company might be relieved of the obligation to furnish it, by reason of inability to procure the gas or for other reason, we need not decide, as no such question appears in the record. That, besides, would be matter of defense, and could not be taken into account in determing the sufficiency of the complaint. *Portland Nat. Gas and Oil Co.* v. *State, supra.*

The failure of duty on the part of the company, as alleged in the complaint, is a tort, even though the complaint also shows a failure to comply with the contract. The contract was but a statement of the reasonable conditions under which the company was required to perform its duty. The authorities show that in such a case the action may be on contract or in tort, the necessary statement of facts being substantially the same in either case. The failure to perform such a contract is in itself a tort. The action in this case is therefore in tort. 2 Addison Contracts, *1119; Cooley Torts, *90, *91; *Cincinnati, etc., R. R. Co.* v. *Eaton,* 94 Ind. 474; *Lake Erie, etc., R. W. Co.* v. *Acres,* 108 Ind. 548; *Brown* v. *Chicago, etc., R. W. Co.,* 54 Wis. 342, 11 N. W. 356, and authorities cited in these cases.

The chief objection made to the complaint is, that the damages sought to be recovered are too remote.

In actions on contract, as said by counsel, the damages that may be recovered for a breach of the covenants and conditions are, (1) those that result from the usual, natural, and probable consequences of the breach, and which, therefore, the parties may be thought to have had in mind when they entered into the contract; and (2) special damages referred to in the

contract, and which actually occur, although not such as might naturally and probably be expected to arise out of a breach of the contract. It is to be observed that such special damages are also in contemplation of the parties in making the contract, as well as the damages of the first class which naturally flow from a violation of the contract. The difference is, that damages naturally arising from a breach of the contract need not be mentioned in the agreement made, but will be presumed to have been in contemplation of the parties, whereas special damages, or those not naturally or usually arising from a breach of the contract, though contemplated by the parties, must be specially referred to in the contract itself.

Whether the loss to appellant by the sickness and death of his children might be considered as the natural and probable result of a breach of appellee's contract to furnish gas for fuel during the cold weather in the latter part of December, 1892, we need not consider, inasmuch as the action here, as we have seen, is in tort, the contract being but a statement of the reasonable conditions under which appellee was to furnish the gas, in discharge of the duty owed by it to appellant.

The rule as to recovery of damages for tort differs in some respects from that which obtains in case of simple breach of contract. All damages directly traceable to the wrong done, and arising without an intervening agency, and without fault of the injured person himself, are recoverable. The wrong in such cases is said to be the proximate cause of the injury.

"In an action for a tort," says Mr. Sutherland, in his work on Damages (2d ed.), section 16, "if no improper motive is attributed to the defendant, the injured party is entitled to recover such damages as will compensate him for the injury received so far as it might

reasonably have been expected to follow from the circumstances; such as according to common experience and the usual course of events might have been reasonably anticipated. The damages are neither limited nor affected, so far as they are compensatory, by what was in fact in contemplation by the party in fault. He who is responsible for a negligent act must answer 'for all the injurious results which flow therefrom, by ordinary natural sequence, without the interposition of any other negligent act or overpowering force. Whether the injurious consequences may have been "reasonably expected" to have followed from the commission of the act is not at all determinative of the liability of the person who committed the act to respond to the person suffering therefrom. * * * It is the unexpected rather than the expected that happens in the great majority of the cases of negligence.' Mr. Wharton says that a man may be negligent in a particular matter 'a thousand times without mischief; yet, though the chance of mischief is only one to a thousand, we would continue to hold that the mischief, when it occurs, is imputable to the negligence. Hence it has been properly held that it is no defense that a particular injurious consequence is "improbable," and "not to be reasonably expected," if it really appear that it naturally followed from the negligence under examination.' * * * There need not be in the mind of the individual whose act or omission has wrought the injury the least contemplation of the probable consequences of his conduct; he is responsible therefor because the result proximately follows his wrongful act or non-action. All persons are imperatively required to foresee what will be the natural consequences of their acts and omissions according to the usual course of nature and the general experience. * * * The law is practical, and courts do not indulge

refinements and subtleties as to causation if they tend to defeat the claims of natural justice. They rather adopt the practical rule that the efficient and predominating cause in producing a given effect or result, though subordinate and dependent causes may have operated, must be looked to in determining the rights and liabilities of the parties. Hence, if the defendant's negligence greatly multiplied the chances of accident, and was of a character naturally leading to its occurrence, the possibility that it might have happened without such negligence is not sufficient to break the chain of cause and effect. An act of negligence will be regarded as the cause of an injury which results, unless the consequences were so unnatural and unusual that they could not have been foreseen and prevented by the highest practicable care." Citing *Stevens* v. *Dudley*, 56 Vt. 158; Wharton on Neg., sections 77, 78; *Baltimore, etc., R. R. Co.* v. *Reaney*, 42 Md. 117; *Reynolds* v. *Texas, etc., R. W. Co.*, 37 La. Ann. 694; *Louisville, etc. R. W. Co.* v. *Lucas*, 119 Ind. 583.

And in the well considered case of *Brown* v. *Chicago, etc., R. W. Co.*, *supra*, citing numerous authorities, the court said: "The rules which limit the damages in actions of tort, so far as any general rules can be established, are in many respects different from those in actions on contract. The general rule is that the party who commits a trespass or other wrongful act is liable for all the direct injury resulting from such act, although such resulting injury could not have been contemplated as a probable result of the act done."

Taking the allegations in the complaint before us as true, the relapse in sickness and the death of appellant's children were the direct consequences of the failure of appellee to supply the fuel necessary to warm his home. One of the conditions under which the gas was to be supplied was that "upon any defect

therein or thereto," appellant should give notice to appellee. It is alleged that "during the severe weather," after appellant had given to appellee "due notice of its failure to supply gas to plaintiff [appellee], and of his inability to procure fuel elsewhere, and of the sickness of said child," and after appellant had made every effort, but been unable, to procure fuel, the house became so cold that his children grew worse and soon after died by reason of the low temperature. Counsel for appellee argue that these and other allegations cannot be true. If they are true, however, and that they are true is admitted by appellee's demurrer, then the liability of appellee becomes evident, unless it can be shown that it was impossible to furnish the gas for reasons showing appellee to be wholly without fault, or because of some fault on the part of appellant, none of which are disclosed in the complaint. It cannot be said, in view of the authorities, or from reason itself, that a natural gas company, occupying the streets and alleys of a city or town by virtue of a franchise granted for that purpose, may, at its pleasure, give or withhold the fuel at its disposal and which may be the means necessary for the comfort, health, or even life of the inhabitants. Nor can it be said, from anything appearing in the complaint, that appellee's failure to supply the gas during the cold weather of December may not have been, as alleged, the proximate cause of the relapse in sickness and the death of appellant's children. The allegation is specifically made; and while it was suggested in argument that independent intervening causes might have brought about the severe sickness and death of the children, yet that is a question for the jury. So also is the suggestion as to whether appellant might in fact have procured other fuel in time to prevent the fatality complained of.

It is by no means an impossibility, or even an improbability, that the sickness and death of the children may have been directly due to the failure of appellee to supply the needed gas for fuel in the severe winter weather; and this failure may have come without warning to appellant and so as to give him no means or opportunity to obtain other fuel in time to save his children.

In *East Tenn., etc., R. R. Co.* v. *Lockhart*, 79 Ala. 315, it was said: "The plaintiff was sick at the time she was turned off the train. It may be said the conductor was ignorant of her physical condition. Ignorance, in such case, is no excuse, and the defendant is responsible, as if he had full knowledge of the fact. Evidence of her ailment is admissible, not as an element of damages, but as tending, in connection with other circumstances, to show the connection between the subsequent aggravation of the sickness and the wrongful act."

And, in *Brown* v. *Chicago, etc., R. W. Co., supra*, it was insisted that the damages claimed for the sickness of the injured party, and for medical attendance and care, were "too remote to constitute a cause of action, and that it was error on the part of the court below not to take that part of the case from the jury." But the insistence was denied, and it was held that the question as to whether the sickness was or was not the proximate result of the wrong done, was one for the jury. It is only when all the facts are found or agreed to that the conclusion as to what was the proximate cause of a given injury is a question of law.

Even an aggravation of existing sickness may make the wrongdoer liable. "If the negligence of a carrier," says Mr. Sutherland, Damages, section 36, "results in an injury to a passenger by which his system is rendered susceptible to disease and less able to resist it

when he is attacked by it, and death results, the injury is the proximate cause thereof, although the disease is to be regarded as an intervening agency, and the malady which attacked him was prevalent in the community." Citing *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346.

We are satisfied that the complaint is sufficient.

The judgment is reversed, with instructions to overrule the demurrer to the complaint and to each paragraph thereof.