THE INDIANA NATURAL AND ILLUMINATING GAS COMPANY *v.* ANTHONY.

[No. 3,255.   Filed Dec. 13, 1900.   Rehearing denied Feb. 21, 1901.]

ACTION.—*When Acts Complained Of were Violative of City Ordinance.*—The fact that a penalty was prescribed by a city ordinance for the acts complained of in an action against a gas company for damages will not preclude plaintiff from maintaining an action in his own behalf for the recovery of such damages as he may have suffered from such wrongful acts. *p. 312.*

Indiana, etc., Gas Co. v. Anthony.

ACTION.—*Torts.*—*Contracts.*—*Gas.*—An action against a gas company for damages caused by shutting off the supply of gas in plaintiff's house was an action in tort, although plaintiff was receiving gas under a contract, since the contract is but a statement of the reasonable conditions under which the company was required to perform its duty.  *p. 313.*

PLEADING.—*Harmless Error.*—Error in sustaining a demurrer to a paragraph of answer was harmless where the facts pleaded were provable under the general denial, which was pleaded.  *p. 313.*

GAS.—*Failure to Furnish.*—*Damages.*—*Removal of Mixer.*—The fact that plaintiff removed the mixer and conducted gas into his stove through a large pipe without the use of a mixer, in violation of his contract with the gas company, did not absolve the company from liability for injuries sustained because of the failure of the company to furnish a sufficient supply of gas for which it had received pay in advance.  *pp. 314, 315.*

VERDICT.—*Interrogatories.*—*Conflict.*—In order that answers to interrogatories may control the general verdict, they must be in irreconcilable conflict therewith and consistent with each other.  *pp. 315, 316.*

SAME.—*Interrogatories.*—*Conflict.*—Where the jury returned a general verdict in favor of plaintiff on a paragraph of complaint seeking damages for physical injuries and mental suffering, and in answer to an interrogatory stated that upon such paragraph plaintiff was entitled to recover a named sum, and in answer to another interrogatory said they found nothing as damages for injury to plaintiff's health, the general verdict will stand, since the answers are in conflict with each other.  *p. 316.*

PAYMENT. — *Recovery of Payments.*—Where a consumer paid a gas company an excessive and illegal rate as a matter of necessity, in order to obtain a supply of gas, he may recover the same, although he knew at the time of payment that the demand was unjust, since the parties were not treating on equal terms.  *pp. 316, 317.*

VERDICT.—*Interrogatories.*—*Conflict.*—*Gas.*—The findings of the jury in an action for injuries resulting from the failure of defendant gas company to furnish plaintiff a sufficient supply of gas that the gas pipes were made of wrought iron and steel of the approved kind, and such as were in general use by gas companies, and that defendant employed a sufficient force of men to maintain an efficient system of oversight and superintendence of its lines, are not necessarily in irreconcilable conflict with a general verdict, finding, in effect, that defendant by its neglect had allowed its lines to become rotten, decayed, and broken.  *pp. 317, 318.*

DAMAGES.—*Excessive Damages.*—A verdict will not be disturbed on the ground of excessive damages unless it is shown that the jury abused the discretion vested in them.  *p. 318.*

Indiana, etc., Gas Co. *v.* Anthony.

New Trial.—*Motion to Make Complaint More Specific.*—Overruling a motion to make a complaint more specific is not a proper cause for a new trial. *p. 318.*

Trial.—*Evidence.*—*Harmless Error.*—Available error cannot be predicated upon the action of the court in sustaining an objection to a question where the witness afterward answered substantially the same question in another form. *p. 319.*

Evidence.—*Insufficient Supply of Gas.*—In an action against a gas company for injury resulting from the failure of the company to furnish plaintiff a sufficient supply of gas, it was not error to permit plaintiff to show that there was an insufficient supply of gas in other buildings, where it was shown that such buildings were attached by means that would furnish as much or more gas than the attachment at plaintiff's stove. *p. 319.*

Same.—*Gas.*—*Insufficient Supply.*—Where, in an action against a gas company for injuries caused by the failure of the company to furnish plaintiff a sufficient supply of gas, a witness testified that during the preceding year defendant had drilled a number of new wells, it was competent to show on cross-examination that there had also been an increase in the number of consumers. *pp. 319, 320.*

Instructions.—*Must Be Considered as a Whole.*—Instructions must be considered as a whole, and cannot be held erroneous by considering detached portions. *p. 320.*

Gas.—*Insufficient Supply.*—*Damages.*—Where a gas company operating under a franchise granted by a city to furnish gas to the citizens thereof receives and retains the agreed price for furnishing a sufficient supply of gas to a consumer, it is liable for damages resulting from a failure to furnish a sufficient supply of gas, and it is no defense to an action for failure to supply sufficient gas for the gas company to prove that it had no gas, or that it furnished all the gas it had. *pp. 320-322.*

From the Boone Circuit Court. *Affirmed.*

*S. M. Ralston,* for appellant.

*T. J. Terhune* and *W. A. Tipton,* for appellee.

Robinson, J.—Complaint by appellee in three paragraphs to recover damages for the wrongful turning off of gas from a heating stove, also for injuries resulting from the alleged negligence of appellant, and to recover alleged excessive charges wrongfully extorted from appellee. Demurrers overruled. Answer in five paragraphs, to the fourth and fifth of which a demurrer was sustained. To

the first and second paragraphs of answer a reply in two paragraphs was filed, to the first of which a demurrer was overruled. Trial by jury with verdict in appellee's favor, and answers to interrogatories. Motions for judgment in appellant's favor on each paragraph of complaint on the answers to interrogatories and motion for a new trial overruled. The rulings on these various motions and the several demurrers are assigned as error.

In the first paragraph of complaint it is averred that appellant is a corporation having, by virtue of certain ordinances which are made part of the complaint, certain powers, privileges, and franchises, among them, to lay mains and pipes in the streets of the city of Lebanon, and to furnish and supply the citizens with gas for light and fuel; that appellee owned a dwelling-house along a gas line, which house was fitted for using gas; that on the 24th day of November, 1897, he attached an upright stove to the service-pipe, made application to appellant for gas, and paid the monthly charge therefor in advance; that appellant thereupon commenced to supply the same with gas, and did supply the same until the 17th day of February, 1899, when appellant's servants without right, and over the protest of appellee's daughter, who was the only member of appellee's family at home at the time, forcibly entered appellee's house and disconnected the stove from the service-pipe, all of which was done without appellee's fault; that when the gas was shut off appellee was not in arrears in payment of rates, but had paid the same in advance of that date, which appellant knew; that the weather was severely and excessively cold and appellee had no other means of warming his house except a cook-stove, which was wholly inadequate; that appellee made immediate demand of appellant to turn on the gas, and informed appellant that on account of the coldness of the weather himself and family would suffer from the cold; that appellant refused to turn on the gas, and for four days and nights deprived appellee of gas for

Indiana, etc., Gas Co. *v.* Anthony.

his stove, during which he and his family suffered greatly from the cold and suffered great bodily and mental pain and distress from the cold weather.

The second paragraph avers in substance that the ordinances, which are made exhibits, prescribe certain duties and liabilities on appellant's part, that appellant charged appellee a greater rate for gas than it was entitled to charge; that since November 24, 1897, to March 10, 1899, appellant "wrongfully, illegally, and extortionately" compelled appellee to pay a monthly rate for gas used in his stoves in excess of the rates fixed by ordinance, to wit, twenty-five per cent. in excess of the rate fixed, which rate is pleaded; that such excessive rates were collected under threats of turning off the gas, and appellee, having no other means to heat his house, and to prevent the gas from being turned off, paid the excessive rates under protest. Judgment for $10.92 is prayed.

The third paragraph sets out the duties of appellant under the ordinance granting its franchise, which ordinance is an exhibit, and avers that appellee has for a long time been a consumer of gas furnished by appellant for heating his dwelling-house; that he was dependent upon appellant for fuel, having no other means of heating his house except by gas furnished by appellant, all of which appellant well knew; that appellant furnished gas brought through pipes from a point about twenty miles distant, and had knowingly, purposely, and negligently permitted the pipes to become rotten, decayed, and broken, whereby large quantities of gas escaped and was wasted; that by reason of such negligence, and neglecting to repair and keep the pipes in repair, and by reason of such neglect and failure, appellant was unable to furnish gas in proper and sufficient quantities to appellee; that appellant for a long time failed, neglected, and refused to furnish appellee with gas in sufficient quantities for the purpose of warming his house; that by reason of such neglect and refusal during the cold weather

of 1898 and 1899 and without appellee's fault, he was by such refusal and neglect almost wholly and entirely deprived of gas for heating his dwelling-house; that on account of such negligence, failure, and refusal, appellee's dwelling was destitute of warmth or heat to the extent that appellee and his family suffered greatly in body and health and from mental anxiety on account of the extreme cold, all of which was occasioned by appellant's failure and neglect to keep its pipes carrying gas in proper and reasonable repair and failure to supply him with gas in proper and sufficient quantities. It is also averred that appellee had in his dwelling certain provisions and potted plants and flowers, which were destroyed by the cold weather and appellant's neglect and failure to supply appellee with gas.

Appellee filed a joint demurrer to the complaint stating as grounds, that the court has no jurisdiction of the subject-matter; that several causes of action are improperly joined, in that the first paragraph is for breach of contract, and the second and third sound in tort; and that neither paragraph states sufficient facts. The sufficiency of the complaint is also questioned by an assignment of error that "the complaint of appellee does not state facts sufficient to constitute a cause of action." This is a joint assignment. It follows that if either paragraph is sufficient, the first and third grounds of demurrer and the assignment that the complaint does not state facts are not well taken. *Kenney, Rec.* v. *Wells*, 23 Ind. App. 490; *Gilmore* v. *Ward*, 22 Ind. App. 106; *Franklin Ins. Co.* v. *Wolff*, 23 Ind. App. 549.

As to the first ground of demurrer, it is true the city ordinance provides a penalty for failure to comply with its conditions, but this does not interfere with the right of a party who is aggrieved to maintain an action in his own behalf to recover such damages as he may have suffered from the wrongful act of the company. It will certainly not be contended that a city could by an ordinance in any manner abridge the right of a citizen to maintain an action for a wrong done him personally.

Nor can we agree with counsel that an action on contract has been joined with an action in tort. All three paragraphs of the complaint are in tort. It is true, in the first paragraph, appellee was receiving gas under a contract with the company, but it was held in *Coy* v. *Indianapolis Gas Co.*, 146 Ind. 655, 36 L. R. A. 535, that such a contract is but a statement of the reasonable conditions under which the company was required to perform its duty, and that in such a case the action may be on contract or in tort as the necessary statement of facts is substantially the same in either case. "The failure to perform such a contract is in itself a tort".

It is unnecessary to enter upon a discussion of the sufficiency of the facts averred in the first paragraph, as under the rulings in the case of *Coy* v. *Indianapolis Gas Co.*, *supra*, it states a cause of action. There was no error in overruling the demurrer to the complaint.

Appellant answered the complaint in five paragraphs, the third of which was the general denial. A demurrer to the fourth and fifth paragraphs of answer was sustained.

The fourth paragraph of answer is addressed to the third paragraph of complaint, and denies that the appellant had any contract with appellee to furnish gas to him, but alleges that the contract to furnish gas for the house in question was with a person other than appellee. This was a denial of any obligation to furnish gas because of any agreement with appellee, and it is clear such facts were provable under the general denial, which was pleaded. If there was any error in sustaining the demurrer to this paragraph, it was harmless.

The fifth paragraph of answer is addressed specifically to the third paragraph of complaint only, and in determining its sufficiency only such matters as are well pleaded in answer to the third paragraph of complaint can be considered. But much of this paragraph is applicable only to matters averred in the first paragraph of complaint and

those of its allegations in answer to any averments in the third paragraph of complaint are not sufficient as an answer in bar. The third paragraph of complaint proceeds upon the theory that appellee was damaged because of appellant's negligence and failure to keep its lines in repair, and negligently permitting them to become rotten, decayed, and broken, in consequence of which a large amount of gas escaped from the pipes. Upon that theory only could appellee recover upon this paragraph. If the lines were kept in proper repair, that fact was provable under the general denial. We can consider the pleading only as the record presents it, and as it comes to us there was no error in sustaining the demurrer.

The first and second paragraphs of answer addressed to the first paragraph of complaint allege, among other things, that by the terms of the contract under which appellant was furnishing gas it had the right to disconnect the stove from its service-pipe, for the purpose of repairs or inspection, for non-payment of bills when due, for fraudulent representation in relation to consumption of gas, or for changing, stopping air holes or enlargement in size of mixer, and for making changes in the connection, without written consent of the company, and it is alleged that at the time the stove was disconnected appellee had removed the mixer and was conducting gas into the stove by a large pipe without the use of the mixer without the company's consent.

The first paragraph of reply to so much of the first and second paragraphs of answer above set out admits that appellee did remove the mixer and did burn gas through a pipe without the use of any mixer, but says that he did so for the reason that appellant did not furnish him sufficient gas through the mixer to heat his house, and that he had no other means for warming his house; that the weather was exceedingly cold and the gas furnished through the mixer was wholly insufficient to prevent appellee and his family from suffering from the severe cold weather; that the mixer

was removed for the sole purpose of obtaining sufficient gas to prevent appellee and his family from suffering from the cold, and that the gas obtained through the pipe after the mixer was removed was not more than sufficient to warm the room and was no more than he was entitled to under the contract; that when appellant informed him that the removal of the mixer was a violation of appellant's rules he offered to replace the mixer and use the same on his stove if appellant would again turn on the gas, which appellant refused to do until after the space of four or five days had elapsed as averred in the complaint. The reply denies all the other allegations of the answer. Overruling a demurrer to this paragraph of reply is assigned as error.

A part of this reply is bad. The removal of the mixer was unlawful, and this wrongful act could not be excused because of the company's failure to furnish sufficient gas through the mixer. When appellee removed the mixer without the company's written consent, it had the right to shut off the supply of gas. But this wrongful act on the part of appellee did not absolve the company from furnishing sufficient gas to appellee for which it had received pay as averred in the complaint. Appellee, under the averments of his complaint, was entitled to recover for all immediate injuries and damages resulting from the wrongful acts of appellant, and such wrongful acts can not be excused on the ground that appellee was also guilty of a wrong, unless appellee's wrong was the proximate cause of the injury. There is enough matter well pleaded in the reply to withstand the demurrer.

The fifth, sixth, and seventh assignments of error question the overruling of appellant's motion for judgment on the first, second, and third paragraphs of complaint, respectively, on the answers to interrogatories notwithstanding the general verdict. In order that answers to interrogatories may control the general verdict they must not only be in irreconcilable conflict with the general verdict, but the an-

swers must be, upon the particular point, consistent with each other. The jury found that appellant had rules for supplying gas to its patrons, but that it did not strictly adhere to them. There are several findings concerning these rules and appellant's rights thereunder, but it is not shown by the answers that appellee had any knowledge of these rules, or that the particular agreement to furnish gas to appellee was made with reference to the rules. In the first paragraph of complaint it is averred that appellee had paid for gas in advance of the time when the stove was disconnected. What we have said in another part of this opinion upon the rights and liabilities of the parties under that averment need not be here repeated.

It is further argued that the answers to interrogatories show that appellee's recovery upon the first paragraph of complaint was for mental suffering only. It is the law that mental suffering unaccompanied by any physical injury can not be the foundation of an action for damages. *Kalen* v. *Terre Haute, etc., R. Co.,* 18 Ind. App. 202, 63 Am. St. 343, but that case recognizes the well settled rule that mental suffering may be taken into consideration in estimating damages in cases of physical injury. The general verdict found in appellee's favor upon the first paragraph, which seeks damages for physical injury and mental suffering. The jury answered that upon this paragraph appellee was entitled to recover a named sum. In another answer they say that they find nothing as damages to appellee for injury to his health. But this does not necessarily mean nothing as damages for physical injury, and if this answer is construed that appellee is entitled to nothing as damages for physical injury, it would contradict the former answer. As the answers upon this particular point would thus be contradictory, they certainly could have no force as against the general verdict.

It is further argued that appellant should have had judgment on the second paragraph, on the answers, because

the jury say that appellant did not threaten, unless the excessive charges were paid, to disconnect the dwelling-house stove, and also answered that there is no evidence that it threatened to disconnect the office stove.    Evidence admissible under the second paragraph would not necessarily be limited to a direct threat.    Appellee averred that he had no other means or appliances for heating, and to prevent the gas from being turned off he paid the illegal and excessive charges under protest.    The answers of the jury do not negative the fact that there may have been evidence of such conduct on the company's part that appellee could rightfully conclude that if he did not pay the charges demanded the gas would be disconnected, although no direct threat to that end was made.    Besides, if appellee paid the excessive rate as a matter of necessity, to obtain what he was justly entitled to, he may recover it back although he knew at the time of the payment that the demand was unjust.    If appellant had the right to turn off the gas unless appellee complied with its demands, the parties were not treating upon equal terms.    Such would not be a case of payment upon a mere demand of money unaccompanied with any power to enforce the demand except by an action at law.    See *Town of Ligonier* v. *Ackerman*, 46 Ind. 552, 15 Am. Rep. 323, and cases there cited; *Reynolds* v. *Copeland*, 71 Ind. 422; *Bennett* v. *Ford*, 47 Ind. 264; *Lafayette, etc., R. Co.* v. *Pattison*, 41 Ind. 312, 320.

The findings of the jury that the gas pipes were made of wrought iron and steel of the approved kind and such as were in general use by gas companies, and that appellant maintained a sufficient force of men to maintain an efficient system of oversight and superintendence of its lines, are not necessarily in irreconcilable conflict with the general verdict, which finds, upon the third paragraph, that appellant, by its neglect, had allowed its line to become rotten, decayed, and broken.    Besides, the jury also found that the pipes were not properly and skilfully inspected and re-

paired in September and October, 1898, and that during the winter of 1898 and 1899 the lines were not in a practicable condition as regards the manner in which the pipes were united with one another and as regards leaks therein.

Of the fifty-one reasons in appellant's motion for a new trial, we will notice those only which have been discussed.

The jury's verdict will not be disturbed on the ground of excessive damages unless they are so "outrageous as to strike everyone with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption." The real question in such a case is not whether in the opinion of the court the damages are excessive, but whether upon the facts the jury have abused the discretion vested in them. Counsel has pointed out no reason why the general rule should not apply in this case. *Lauter* v. *Duckworth,* 19 Ind. App. 535, and cases cited; *City of Frankfort* v. *Coleman,* 19 Ind. App. 368, 65 Am. St. 412, and cases cited; *City of Mt. Vernon* v. *Hoehn,* 22 Ind. App. 282; *Farman* v. *Lauman,* 73 Ind. 568.

Overruling a motion to make a complaint more specific is not a proper cause in a motion for a new trial.

The only particular in which counsel claim that the verdict is not sustained by sufficient evidence is that the evidence fails to show that appellant made any threats to turn off the gas if the excessive charges were not paid. As we have already said, it was not necessary that any threat should have been directly made. Appellee testified to conversations in which there was a controversy about the rate; that he complained that the rates were too high; that the amount of gas consumed was not worth the charge made; that appellant said that was the rule; that the bills would be paid in that way or appellee would not burn it; that appellee could pay what the company asked or bring in the mixers. This amounted to a statement that if the rates asked were not paid appellee would no longer be furnished gas.

It is urged the court erred in refusing to permit a witness to answer the following question asked by appellant: "What is the fact as to whether or not it is recognized by experienced gas men, that is, men of experience in handling natural gas, that it is next to impossible to construct a system for the use and consumption of natural gas so as wholly to avoid leaks?" It would not be competent for the witness to say what opinion other experienced gas men might have on the subject. So far as the question might be applied to the witness himself he was permitted afterwards to answer a question as to the extent to which it is practicable to construct a gas plant for the purpose of supplying consumers with gas so as wholly to avoid leakage in its system of pipes.

Some of the questions asked, and to which objections were sustained, were afterwards asked in substantially the same form and answered. It is not error to sustain an objection to a question, if the witness afterwards answers substantially the same question in another form.

A witness was asked to state what the fact might be with respect to the supply of natural gas for the court-house during the time in question. Objection was made that it had not been shown that the fixtures and appliances for the use of gas in the court-house were the same as those used in appellee's stove. An offer was then made to show that the court-house and other places inquired about were attached by means that would furnish as much or more gas than the attachment at appellee's stove, that the supply pipes there were larger than at appellee's stove and would furnish more gas. There was no error in permitting the witness to answer the question. The offer to show the conditions took the question out of the rule laid down in *Indiana, etc., Co.* v. *New Hampshire Ins. Co.,* 23 Ind. App. 298, and *Washington, etc., Co.* v. *McCormick,* 19 Ind. App. 663.

A witness for appellant had testified that during the preceding year appellant had drilled a number of new wells. It was competent on cross-examination to show that while

there had been an increase in the number of wells there had also been an increase in the number of patrons at other places, if such was the fact.

There was no reversible error in permitting appellee to introduce in evidence the city ordinance under which appellant operates its plant. We think the ordinance was admissible to show appellant had assumed a duty to supply citizens with gas upon application, and upon one issue tendered to show the rates it might lawfully charge. But if we should concede that it was not admissible we fail to see how its admission could in any way prejudice appellant's rights.

Appellant argues that the fifth instruction given by the court is erroneous, but reaches this conclusion from a discussion of a part of the instruction only. It is well settled that an instruction must be considered as a whole and can not be held erroneous by considering detached portions. This instruction reads: "A gas company, which requires its patrons to pay for the use of gas by monthly instalments in advance, obligates itself to its patrons making such advanced payments to furnish them with gas in proper and sufficient amount to subserve the purpose for which the payments are made. If the plaintiff in this case became and was a patron of the defendant, and was required to and did pay the defendant for the use of gas to supply his heating stove by monthly instalments in advance, then the defendant was legally bound to furnish the plaintiff with a sufficient amount of gas for his said stove, and would be liable in damages to the plaintiff for a failure to do so, provided such failure resulted from the wrongful acts set forth in the complaint. And it is no defense to an action for the failure to supply sufficient gas for the gas company to prove that it had no gas, or that it furnished all the gas it had, so long as it retained the money received from its patrons in payment for gas. Before a gas company will be heard to interpose the defense that it has no gas, or that it has furnished

all the gas it has, it will first be required to refund, or offer to refund, the money which it has received in advance in payment for the supply of gas to its patrons."

This instruction correctly states the law. The first paragraph of complaint avers that payment for the gas had been made in advance. It is averred in an answer to this paragraph that natural gas in pressure and quantity had become so reduced, from natural causes, in the fields operated by appellant, that it was impossible, by reasonable means and the expenditure of large and excessive sums of money, to furnish gas to appellee in greater quantity than it did furnish it while the stove was connected with the line. But the company could not retain pay for sufficient gas and defend on the ground that it had no gas. The company had obligated itself to furnish sufficient gas to its patrons, for which it had received pay. So long as it receives and retains the agreed price for furnishing sufficient gas, it must respond in damages resulting from its failure to furnish sufficient gas. So long as it enjoys the franchise granted it by the city, it must furnish a citizen along its mains, who makes the necessary arrangements to receive it and complies with the reasonable regulations of the company, such gas as he may require, and upon refusal may be compelled to do so by mandate. *Portland, etc., Co.* v. *State, ex rel.,* 135 Ind. 54, 21 L. R. A. 639; *Coy* v. *Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535. What the relative rights of the parties might be should a citizen demand gas and tender the charges and the company refuse because of insufficient gas, we need not decide, because the question is not presented by the issues in this case. For this reason it is unnecessary to consider the two instructions tendered by appellant and refused.

Appellant assumed the duty of furnishing appellee with gas and contracted with him to do so and had received pay for doing so. We do not mean to say that the company

might not be relieved of that duty under certain conditions. But that is not the question here. It saw proper to treat its obligation as still in force, and as long as it saw proper to continue the obligation it must respond for any damages resulting from its failure to carry out the obligation. There is no error for which the judgment should be reversed.

Judgment affirmed.