## BRUCE *v.* INDIANAPOLIS GAS COMPANY.

[No. 6,768.   Filed June 21, 1910.]

1. EVIDENCE.—*Judicial Notice.—Failure of Natural Gas.*—Courts take judicial notice of the failure of natural gas.   p. 196.

2. CONTRACTS.—*Extension of Gas-Mains.— Torts.*— An action to recover the contract price of certain extensions of gas-mains never laid, does not sound in tort.   p. 197.

3. CONTRACTS.—*Discharge.—Extension of Gas-Mains.—Failure of Gas.—Recovery of Contract Price.*—A contract between a gas company and the owner of certain lots whereby such company, for a certain sum agreed to extend its mains along the alleys to the rear of such lots and to connect with such lots as soon as buildings were erected thereon, is discharged by the failure of natural gas, and such owner cannot recover for the company's failure to connect with the remainder of the lots, after the natural gas fields have failed and gas cannot be obtained.   p. 197.

4. CONTRACTS.—*Impossible Performance.*—A contract to furnish natural gas to consumers does not ordinarily render the company liable for its failure to furnish it, where there has been a failure of gas.   p. 199.

From Boone Circuit Court; *S. R. Artman,* Judge.

Action by Margaret Bruce against the Indianapolis Gas Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Woodburn Masson,* for appellant.

*F. Winter,* for appellee.

MYERS, J.—Appellant withdrew her third paragraph of complaint, the court sustained a demurrer to the remaining four paragraphs, and judgment on demurrer was rendered in favor of appellee.

The ruling of the trial court in sustaining appellee's demurrer to the first, second, fourth and fifth paragraphs of complaint, for want of facts, is questioned in this court by proper assignments of error.

The facts common to the first and second paragraphs of the complaint show that on March 27, 1893, appellant was

the owner of a certain addition to the city of Indianapolis, which comprised 132 vacant lots; that running north and south through said addition were three alleys, laid out and dedicated to public use; that on said date appellee was engaged in supplying the residents of said city with natural gas, through connections with its system of low-pressure gas-mains laid in the streets and alleys of said city; that said lots were in the resident district, and were adapted for the location of residences; that appellant desired to sell said lots, and, to facilitate the sale thereof, sought to have them connected with appellee's natural gas-mains, which facts were known to appellee at the time of making the following written contract:

"This memorandum of agreement made this 27th day of March, 1893, by and between the Indianapolis Gas Company, of the first part, and Margaret Bruce, of the second part, witnesseth:

The party of the first part agrees to lay a four-inch low-pressure natural gas pipe in the first, second and third alleys west of College avenue, between Bruce and Sutherland streets. Said party of the second part agrees to pay said party of the first part the sum of $40 for one connection to each of the lots numbered from 1 to 132, both inclusive, in the district piped under this agreement.

In consideration of $1, hereby paid by said first party to second party, said second party hereby sells, transfers and assigns to said first party the pipe-lines to be laid under this agreement. Said transfer shall be absolute and in effect without any further consideration or acknowledgment whatsoever.

It is further agreed and understood that said pipe-line laid under this agreement shall become a part of the low-pressure system of said first party, and services shall be laid from main to property line free of charge when the consumers are ready to use gas. Gas shall be furnished to consumers upon the same conditions and terms and subject to the same rules and regulations as other consumers in the city of Indianapolis, Indiana.

Indianapolis Gas Co.,

Attest:                              Per John R. Pearson,
    S. D. Pray, Secretary.        Assistant to President.''

It is also alleged that upon the execution of said agreement, and pursuant to the terms thereof, appellant paid to appellee the sum of $5,280 for one connection to each of said lots; "that defendant proposed to plaintiff, after the execution of said contract, that it would put in and make connections between any of said lots, and the mains to be so laid by it, at any time plaintiff notified it to make such connections and indicated with which lots she desired connections made;" that prior to the year 1903, upon request of appellant, appellee connected with its said mains forty-six of said lots on which residences had been erected, the remaining eighty-six lots, in the year 1903, remained vacant and unsold, and were never connected with appellee's gas-mains; that appellee abandoned its said contract and removed its mains laid by it under said contract.

In addition to the facts before stated, in the second paragraph it is alleged that in the year 1903 natural gas failed to such an extent that appellee could no longer furnish it to its patrons; that it then abandoned that part of its business, and thereafter had no natural gas in its mains, nor has it since carried on the business of supplying natural gas; that it is unable further to carry out its contract with appellant, to her damage.

The fourth and fifth paragraphs contain practically the same facts as those alleged in the first and second, except that in these paragraphs an oral contract is relied on, not materially differing from the stipulations in the written contract.

Eighty-six of appellant's lots, we may assume, the contrary not appearing, were never improved, and no demand was ever made upon appellee to lay service-pipes from its mains to the property line of these lots. Ten years after the execution of the contract here sued on, natural gas failed, thereby making it impossible for appellant longer to furnish gas to its customers, and it ceased to do business. In 1904

the Supreme Court of this State said: "It is a mat-
1. ter of general knowledge, hence a fact, and of which
this court has judicial notice, that natural gas, within
the territory or field in question as formerly controlled by
appellee, no longer exists in quantities sufficient to furnish
the inhabitants of the city of Indianapolis with fuel for
heating purposes." *State, ex rel.,* v. *Indianapolis Gas Co.*
(1904), 163 Ind. 48. From the complaint it does not ap-
pear that the conditions existing at that time have in any-
wise changed. So that the question here involves the right
of appellant to recover from appellee $40 for each lot not
connected with the latter's gas-mains.

Appellant bases her right of recovery upon the principle
of law announced in *Matthews Glass Co.* v. *Burk* (1904),
162 Ind. 608. That was a suit by a window glass manu-
facturer for a balance alleged to be due from a purchaser
upon a written contract providing that the glass should be
paid for on receipt thereof. The glass was delivered at
different times in carload lots. The court in construing that
contract held that it was the intent of the parties that all
glass should be paid for on delivery, and that such payment
closed the transaction to that extent. Here it is contended
that the contract, as in the case cited, was divisible, and that
each connection was a separate transaction, although paid
for in advance.

Appellant admits that the failure of natural gas relieved
appellee from the discharge of its obligation to make nat-
ural gas connections. But it is claimed, that under the rul-
ing in the case of *Indiana, etc., Gas Co.* v. *Anthony* (1901),
26 Ind. App. 307, appellee ought not to be allowed to retain
something it received for nothing. We are not persuaded
that the doctrine announced in either of the cases last cited
controls the case before us. The case of *Indiana, etc., Gas
Co.* v. *Anthony, supra,* was one to recover damages for the
wrongful turning off of gas from a heating stove, also for
injuries resulting from the alleged negligence of the gas

company, and to recover alleged excessive charges wrongfully extorted from plaintiff. That was an action in tort against the company for neglecting to perform a contractual duty. The decision was controlled by the case of *Coy* v. *Indianapolis Gas Co.* (1897), 146 Ind. 655, 36 L. R. A. 535, wherein it was held that "in an action in tort all damages directly traceable to the wrong done and arising without an intervening agency and without fault of the injured party are recoverable."

The case at bar is not an action in tort, nor is it an action to recover an excessive payment made as a matter of necessity, to obtain what appellant was justly entitled 2. to at the time the contract was made, as the facts in the case of *Indiana, etc., Gas Co.* v. *Anthony, supra,* show.

Returning to the contract before us, it appears that appellee agreed to lay a four-inch low-pressure natural gas pipe-line in certain named alleys running through the 3. addition to the city of Indianapolis, owned by appellant. That stipulation was kept and the line laid. It does not appear from the complaint that appellee, prior to its contract with appellant, was under any obligation whatever to extend its mains through the alleys named. It was a matter about which the parties had a right to contract. There is no claim of fraud or undue advantage. Appellant had 132 vacant lots which she wished to sell, and, to facilitate the sale thereof, she desired to have appellee extend its mains so that the lots would be accessible to a supply of natural gas. The parties stood upon an equal footing, each relying upon a pecuniary advantage in the extension of said mains. There was no present demand for natural gas on any of said lots. Such a demand depended not alone upon a sale of the lots, but the erection of dwellings thereon. The extent of the demand for gas by residents in said addition was problematical. Without customers or users of gas, the capital employed by appellee in such extensions would be

without profit. Therefore, as we view this transaction, appellant, in order to induce appellee at that time to make such extensions made the payment as claimed. There is no showing that the intention of the parties was not expressed by the language they used, nor does the contract seem to be ambiguous or uncertain. While at this time it may seem that the gas company was the better protected against the uncertainty which might and did happen, yet there is no showing that either of the parties when the contract was made reasonably anticipated or contemplated it. Whether appellant was benefited by the contract to the extent she had anticipated, is not a matter for us to consider. By its terms, appellant agreed to pay $40· for one connection to each of the lots, numbered from 1 to 132, both inclusive. No time was fixed when these payments should be made. But from the complaint we learn that appellant at the time the contract was entered into paid $5,280, which appears to be the sum total she agreed to ·pay for one connection to each of the 132 lots. In the absence of anything to the contrary, the construction placed upon a contract by the parties thereto is a strong circumstance, if not ·of controlling influence, as to what the contract was in that particular. So in this case, as against the pleader, we may assume that appellant did nothing more than she was required to do by the terms of the agreement. It was also agreed that she should not have any interest in the pipe-line, but that it should become a part of appellee's low-pressure natural gas system then being operated by it in the city of Indianapolis, and there is no contest over this stipulation. The contract further provides for the laying of service-pipes by appellee to the property line of the lots, free of charge, when consumers are ready to use gas. This was done as long as the gas lasted. It was certainly the purpose of appellant to secure a supply of natural gas readily accessible to each of said lots. It would be unreasonable to assume that she paid $5,280 for the mere right of having her lots connected with

appellee's low-pressure gas-mains if it had no gas to transport through them, and yet she insists that that was what she bought. At the time the contract was made, appellee was engaged in furnishing natural gas to its consumers in the city of Indianapolis, but as we read the contract, whether written or oral, appellee was not absolutely bound to

4. furnish gas or pay damages for nonperformance, if, without its fault, a contingency should arise making it absolutely impossible to do so. Nor do we understand that appellant is proceeding upon the theory of liability on the part of appellee for what it could in nowise control, but upon the theory that the contract was severable, in that the price to be paid by her for the extension of such mains was apportioned to each lot. There is no provision in the contract requiring payments to be made as the gas-mains were connected by 'a service-pipe leading to each lot, but it is provided that the lots were to be connected as the demand for gas required. Had appellee consented to extend its mains and receive a payment of $40 for each lot when connected, such payment would have closed the transaction to that extent, and would have furnished some basis for appellant's contention. But, as we have seen, the parties did not proceed upon that line, and such contention cannot be sustained.

Appellant says: "The failure of natural gas, of its natural supply, classed as an act of God, would relieve appellee from the discharge of its obligation to make natural gas connections." By this statement appellant impliedly admits that the continued existence of natural gas was an indispensable element of performance of that part of the contract relating to the making of connections. Therefore, if performance depended on the continued existence of natural gas, and there is no provision in the contract for a substituted performance, "the existence of the means of performance is a condition without which, in the absence of fault, there can be no liability. This doctrine is very clearly stated in 2 Chitty, Contracts (11th ed.) 1076, 1078, and the cita-

tions. The doctrine is reasonable, and assumes that both· parties become interested in the continued existence of the subject of the condition." *Shear* v. *Wright* (1886), 60 Mich. 159, 26 N. W. 871. See, also, *Krause* v. *Board, etc.* (1904), 162 Ind. 278, 65 L. R. A. 111, 102 Am. St. 203; *Walker* v. *Tucker* (1873), 70 Ill. 527; *Lorillard* v. *Clyde* (1894), 142 N. Y. 456, 37· N. E. 489, 24 L. R. A. 113.

In the case of *Siegel, Cooper & Co.* v. *Eaton & Prince Co.* (1897), 165 Ill. 550, 46 N. E. 449, it was said: "We think the law is, that where a contract is entered into with reference to the existence of a particular thing, and that thing is destroyed before the time for the performance of the contract, without the fault of either party, both parties are excused from performing the contract, but neither is entitled to recover anything for a part performance thereof."

Judgment affirmed.