## IBACH *v.* HUNTINGTON LIGHT AND FUEL COMPANY.

### [No. 2,792.   Filed November 17, 1899.]

NATURAL GAS.—*Negligence.*—*Complaint.*—*Contributory Negligence.*— A complaint in an action against a natural gas company for damages to plaintiff's house caused by an overheated stove alleged that plaintiff had control of all gas appliances within her home, except the mixer, that defendant over plaintiff's protest substituted a number seven for a number five mixer, but did not show that defendant was bound to furnish such mixer as the consumer wished, or that the fire might not have occurred with either mixer; that a valve was placed in the pipe to regulate the flow of gas, but that the amount of the flow depended entirely upon the pressure, which was regulated by the company ; that the "valve was used to turn off and put on the gas," and that "she had carefully adjusted the valve to suit the pressure before her absence." *Held,* that the complaint fails to show any negligence on the part of defendant, and also fails to show that plaintiff was free from fault.

From the Huntington Circuit Court.   *Affirmed.*

*B. F. Ibach, J. G. Ibach, J. C. Branyan* and *B. M. Cobb,* for appellant.

*O. W. Whitelock, S. E. Cook, J. B. Kenner* and *U. S. Lesh,* for appellee.

ROBINSON, J.—Appellant avers in her complaint that the city of Huntington granted appellee the use of its streets to lay mains to furnish natural gas to the citizens of such city, the consumer to pay appellee according to the number of the mixer to be used; that appellee retained the control of and directed the use of the mixer, which is an instrument regulating the flow of gas at the point where used for fuel; that under the supervision of appellee she had her residence supplied with pipes, and that appellee attached the same to its main in the street along appellant's property, and attached the same to a heating stove used by her for heating purposes; that the arrangement for using gas was by placing an instrument called a mixer at the end of the supply pipe at a point near where the gas enters an appliance known as a burner,

being so arranged that the gas passes out of the pipe through the mixer into the burner, and "in the pipe before the point where gas passes through the mixer is placed a valve which is opened and closed to regulate the flow of gas, but the amount of the flow of gas depends upon the pressure entirely, which pressure is regulated by appellee" and is not and can not be controlled by the consumer; that the valve does not control the heat created by the burning of the gas, but that that depends on the pressure and size of mixer; that the "valve is used to turn off and put on the gas; the heat supplied depends on the pressure furnished by the company; that a valve may be wide open and but a slight flow of gas and small heat result, according to the pressure, or it may be almost closed and owing to the pressure and size of the mixer great and dangerous heat follows, which she did not know;" that a number five mixer if the valve was wide open did not create a large, excessive, and dangerous heat at any pressure furnished by appellee; that on the —— day of November, 1895, she was using a number seven mixer with the valve slightly turned on and a small quantity of heat with no danger of excessive heat, as she had done with a number five mixer, and she believed, as appellee had assured her it was safe, that she could use it as she had used the number five; that appellee, knowing that sometimes pressure was increased without the consumer's knowledge, provided no means by which the consumer would be advised of such increase, and had no arrangement connected with the mixer or valve to regulate the flow of gas and avoid dangerous and excessive heat in the absence of the consumer; that appellant had for a number of years used a number five mixer, which remained the property of appellee, and over which she had no control, and which was of sufficient capacity to furnish all the heat required without excessive heat, which appellee knew; and if in her absence the pressure increased there was no danger of excessive heat; that without the request and over the protest of appellant, appel-

Ibach *v.* Huntington Light, etc., Co.

lee took out the number five mixer and replaced it with a number seven mixer which supplied a larger volume of fuel, which replacing was done for the sole purpose of increasing the revenues of appellee, as by its franchise appellee was permitted to charge according to the size of the mixer in use; that the number seven mixer furnished too much fuel, and she requested it to be replaced with the one removed, and refused to pay the extra charge, and upon such refusal appellee threatened to take out the mixer and cut off her supply of gas, and being then in feeble health and having no other means to heat her house she was compelled to use the mixer; "that she did not know neither had she the means of knowing that said number seven mixer was furnishing too much gas for the capacity of her stove;" that she "was not instructed how she should use said mixer so as to check any excess of heat, and she did not know that the said mixer required different management from that of the one theretofore used, or that if an increase of pressure arose in her absence the same would set fire to her house;" that appellee knew the number five mixer had been used in the same stove and at the same place for one year with safety, and without overheating the stove, and that it furnished all the heat necessary for comfort and health; yet knowing these facts it took out the same and put in the number seven, assuring appellant that the same was known to be safe and was safe, "thereby overloading and overheating the capacity of said stove, and its pipes, thereby setting fire to said residence by the excessive heat produced by the enforced use of said larger mixer;" that by putting in the number seven mixer in place of the number five "by reason of increase of pressure as aforesaid, in her absence, the said residence caught fire by the excessive heat produced (though she had carefully adjusted the valve to suit the pressure before her absence) by which the walls," etc., were burned to her damage.

The only question presented is the sufficiency of the complaint.

If a company furnishing natural gas to consumers negligently increase the pressure of gas in a consumer's pipe so beyond the accustomed pressure as to overheat the consumer's stove, and set fire to his house, the consumer being without fault, the company is liable for the damages. *Alexandria Mining, etc., Co.* v. *Painter*, 1 Ind. App. 587; *Indiana, etc., Gas Co.* v. *New Hampshire Ins. Co.*, *post*, 298.

In the case at bar the complaint fails to make a case within the above rule. Construing the pleading most strongly against the pleader we can but conclude that it fails to show any negligence on appellee's part, and also fails to show appellant free from fault. It appears that appellant had control of all gas appliances within her home except the mixer. Complaint is made that appellee changed, over appellant's protest, a number five for a number seven mixer, but there is nothing to show that appellee was legally bound to furnish such mixer as the consumer wished. So far as we are informed by the complaint, the fire might have occurred with either mixer. It is not shown where the right to determine the size of the mixer lay. Appellee may have had the right under its franchise to require a certain mixer for such a house as appellant's; it may have had a perfect right to change the mixer as it did. It is not claimed the mixer put in was defective, or that any of the appliances were defective. It is not shown that the change was a negligent act, or that appellee did anything wrongful in making the change, or that after the change was made it negligently increased the pressure through such changed mixer. It is averred that the gas passes out of the pipe through the mixer into an instrument called a burner, and in the pipe before the point where the gas passes through the mixer "is placed a valve which is opened and closed to regulate the flow of the gas, but the amount of the flow of gas depends upon the pressure entirely," and that the pressure is regulated by the company. It is also averred that the "valve is used to turn off and put on the gas". Construing these averments together they mean

that the flow of gas, whether the pressure was great or small, was controlled by this valve. And it seems appellant knew this and acted upon it, and that she also knew the pressure was not uniform for she avers that "she had carefully adjusted the valve to suit the pressure before her absence." If she made a mistake and failed to turn the valve low enough, she can not complain. It is clear from the pleading that she knew the manner of regulating the flow of gas, and made an attempt to regulate it.

The case of *Richmond Gas Co.* v. *Baker*, 146 Ind. 600, 36 L. R. A. 683, cited by counsel, does not apply. In that case the company used a defective elbow connecting its pipe with a dwelling, which defect it failed to repair, though repeatedly called upon to do so, and it was held that the company was liable for injuries resulting from an explosion of escaping gas, the injured party being without fault. Judgment affirmed.

Wiley, J., took no part in this decision.