## CITIZENS GAS & OIL MINING COMPANY v. WHIPPLE ET AL.

[No. 4,522.   Filed January 13, 1904.]

NATURAL GAS.—*Failure to Regulate Flow.—Negligence.—Damages.*—A complaint against a natural gas company engaged in furnishing natural gas to plaintiffs alleging that it negligently failed to regulate the flow of gas into the pipes leading to plaintiffs' stove, by reason of which the pressure and quantity of gas were increased beyond that theretofore supplied to such an extent that the stove was overheated, setting fire to the property, without plaintiffs' fault, states a cause of action.   *pp. 204, 205.*

PLEADING.—*Harmless Error.*—Where all the material facts pleaded in an answer were provable under the general denial, sustaining a demurrer to such answer was harmless.   *pp. 205, 206.*

APPEAL AND ERROR.—*Evidence.*—An objection to evidence that it is not competent nor material presents no question for review. *p. 206.*

SAME.—*Briefs.—References to Record.*—The Appellate Court will not search the record for alleged errors in the admission of evidence where no reference is made by which the evidence and rulings may be found.   *p. 206.*

EVIDENCE.—*Damages.—Reimbursement by Subscriptions.*—In an action against a gas company for damages to plaintiffs' property by fire, evidence that plaintiffs circulated a petition among the citizens and got from five to six hundred dollars to reimburse them for the loss was properly excluded, it not being shown that the subscriptions were made by defendant or by its procurement, and were not made to satisfy, in whole or in part, defendant's liability.   *pp. 206, 207.*

NATURAL GAS.—*Care Required in Furnishing.*—Natural gas is recognized as a dangerous substance, and the care in its use must be commensurate with such danger.   *p. 211.*

SAME.—*Connection Without Consent.—Waiver.*—The failure to obtain the written permission of a gas company to make connections with its service-pipe may be waived by the company by demanding and accepting payment for the gas consumed.   *p. 211.*

TRIAL.—*Instruction.—Words and Phrases.—Use of Word "Plaintiff" for "Plaintiffs."*—The use of the word "plaintiff" in an instruction, where there are two plaintiffs to the action, is not necessarily misleading.   *p. 212.*

NATURAL GAS.—*May Leave Burning During Night.—Negligence.*—In an action for damages for the destruction of property by natural gas the court properly instructed the jury that it was not, as a matter

of law, negligent for plaintiffs to leave the gas burning in their stove during the night-time, if they used proper care and caution in turning down and adjusting the key valve, and looking after the service-pipes and appliances, so as properly to regulate the gas while the same was furnished at a safe pressure.  *p. 212.*

From Adams Circuit Court; *Abram Simmons,* Special Judge.

Action by Stephen A. D. Whipple and another against the Citizens Gas & Oil Mining Company.  From a judgment for plaintiffs, defendant appeals.  *Affirmed.*

*D. T. Taylor, W. F. MacGinnitie, T. J. Taylor, D. B. Erwin, Shaffer Peterson* and *J. J. M. LaFollette,* for appellant.

*McGriff & Bergman, J. J. Moran, C. J. Lutz* and *S. A. D. Whipple,* for appellees.

Robinson, J.—Appellees recovered a judgment for the burning of certain property, caused by appellant's alleged negligence.   The sufficiency of the complaint, which is in three paragraphs, is first questioned.

The first paragraph avers that appellant was engaged in supplying citizens with natural gas for domestic and manufacturing purposes; that appellees were patrons of appellant, and were using gas, under a contract, in a stove in their factory; that the natural pressure of the gas is so great that it is necessary at all times to maintain regulators, which regulators were maintained by appellant, to control the flow of gas, and make the use of the same safe for consumers, and that it is necessary that the pipe-lines and regulators should be under the control and management of a skilled person, to oversee and control the same, that gas might be furnished to consumers at a low, safe, and uniform pressure; that on a certain date such regulators did not properly control the pressure and flow of gas so as to furnish appellees' stove with gas at a safe, low, even, and uniform pressure; that appellant carelessly and negligently failed to regulate and maintain such reg-

ulators on such date, and negligently and carelessly failed and neglected to watch and oversee the mains, regulators, and appliances, and negligently and carelessly left such regulators and appliances without the oversight or supervision of any person, and because of such carelessness and negligence the gas flowed in and through the pipes and regulators with great force and high pressure, thereby forcing through the service pipe and into the stove, when the gas was burning therein, a large quantity and volume of gas, largely in excess of the amount theretofore supplied by appellant for heating purposes, and by reason thereof the stove was, by the gas burning therein, so intensely heated that it set fire to the building, all without appellees' fault. The three paragraphs of complaint are quite voluminous, and the material averments in each paragraph are substantially the same.

The action is in tort, and not for damages for breach of a contract. It is true, the complaint alleges that appellees were receiving gas under a contract, but the cause of action is based upon negligence. *Indianapolis, etc., Gas Co. v. Anthony,* 26 Ind. App. 307; *Coy v. Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535. Each paragraph of the complaint shows that appellant was furnishing natural gas to appellees; that it negligently failed to regulate the flow of gas into the pipes leading to appellees' stove, by reason of which the pressure and quantity of gas were increased beyond that theretofore supplied, to such an extent that the stove was overheated, setting fire to the property, without appellees' fault. Under the authorities the complaint states a cause of action. *Alexandria Mining, etc., Co. v. Painter,* 1 Ind. App. 587; *Indiana, etc., Gas Co. v. New Hampshire Ins. Co.,* 23 Ind. App. 298; *Ibach v. Huntington Light, etc., Co.,* 23 Ind. App. 281.

Appellant's answer was in three paragraphs, the first of which was the general denial. As the material facts pleaded in the second and third paragraphs of answer

were provable under the general denial, sustaining the demurrer to these paragraphs was not harmful error. Any fact or facts showing or tending to show that appellant's gas system at the time of the fire was properly managed, that it was not negligent in any of the particulars charged in the complaint, and that appellees were not without fault, could be shown under the general denial. *Wabash, etc., R. Co.* v. *Johnson,* 96 Ind. 44; *Crow* v. *Carver,* 133 Ind. 260.

Appellant's counsel have discussed, at some length, the evidence upon the questions of negligence and contributory negligence. No good purpose would be subserved by a discussion of the evidence at this time. It is sufficient to say that an examination of the record discloses evidence to authorize the jury's conclusion upon both these questions.

An objection to evidence that it is not competent nor material presents no question for review. *Mortgage Trust Co.* v. *Moore,* 150 Ind. 465; *Western Assur. Co.* v. *McAlpin,* 23 Ind. App. 220, 77 Am. St. 423.

Many objections to the admission of evidence are argued in appellant's brief where no reference is made to the bill of exceptions by which the evidence and the ruling questioned may be found. It has long been the rule that the court will not search the record for such evidence and rulings. Ewbank's Manual, §180; *McCaslin* v. *Advance Mfg. Co.,* 155 Ind. 298; Rule 22, subdivision 5.

Appellant's counsel have not shown that the error, if any, was harmful, in permitting the introduction in evidence of a certified copy of a certain deed to the land on which the buildings burned were situated. Its introduction in evidence would in no way harm appellant.

Appellee Whipple was recalled as a witness by appellant, and asked whether after the fire he did not circulate a paper among the citizens and get from five to six hundred dollars in cash and material for the purpose of reim-

Citizens Gas, etc., Co. v. Whipple.

bursing him for the loss by the fire. Upon objection being sustained, an offer was made to show that by such subscriptions he had received a greater sum than the loss by the fire, "and for the further purpose of showing that at the time of the fire the plaintiffs were not claiming that the fire occurred by reason of any act or omission on the part of the defendant gas company." This evidence might have been admitted, with an instruction properly limiting its purpose, as going to the credibility of the witness who was a party to the action, but its exclusion is not reversible error. It was not proper evidence as affecting the amount of damages. The subscriptions were not made by appellant or by its procurement, and were not made to satisfy, in whole or in part, appellant's liability for the alleged wrongful act. *Cunningham* v. *Evansville, etc., R. Co.,* 102 Ind. 478, 52 Am. Rep. 683; *Sherlock* v. *Alling,* 44 Ind. 184; *Ohio, etc., R. Co.* v. *Dickerson,* 59 Ind. 317.

At the request of appellees the court gave, among others, the following instructions: "(1) I instruct you that a corporation or person furnishing natural gas to the stoves, heaters, burners, pipes, pipe-lines, machinery, or apparatus of another, to be used for the purpose of domestic heating, for fuel in a dwelling-house, storeroom, office, or shop, is bound to exercise such care, skill, and diligence in all its operations as is called for by the delicacy, difficulty, and dangerousness of the nature of its business, in order that injury may not be done to others; that is to say, if the danger, delicacy, or difficulty is extraordinarily great, extraordinary skill and diligence is required. (2) I instruct you that, by the law governing this case, it was the duty of the defendant, as it is of all corporate companies which are invested for their own private advantage with the great and important privilege of supplying a community with natural gas for private habitation heating, to exercise such care, diligence, and skill in the conduct of its

business as is proportioned to the danger and risk to the property of others. (3) I instruct you that natural gas is a dangerous, explosive, inflammable, and deadly substance, and the person or corporation who furnishes it for a valuable consideration to heat the stoves, service-pipes, heaters, burners, or apparatus of another for the purpose of fuel for domestic heating, must use such care, skill, attention, and diligence, so that no greater amount of pressure thereon shall be furnished than is proper to be furnished, in order to prevent injury to the person and property of others; and in such case care, skill, attention, and diligence must be used in proportion to the danger of such substance and business, and unless such corporation uses such care, skill, attention, and diligence, it is guilty of actionable negligence. (4) I instruct you that if you find, from the evidence, that the defendant at the time of the burning of the plaintiffs' property, as alleged in their complaint, was furnishing, for a valuable consideration, natural gas to the service-pipes, mixers, valves, burners, and stoves of the plaintiffs, for the purpose of using such gas for fuel for domestic heating, or warming plaintiffs' office in the factory building mentioned in the complaint, at the time of such burning, then it was the duty of the defendant, under the law, to use such care, diligence, and skill, both in providing proper machinery, regulators, and apparatus, work, labor, and attention, in order to control such gas and the amount of pressure furnished to such service-pipe, mixer, valve, burner, and stove, as was in due proportion to the nature of the substance used. (5) I instruct you that if you believe from the evidence that at the time of the alleged injury and burning of plaintiffs' property, mentioned in the complaint, the defendant, for a valuable consideration, was furnishing natural gas to the service-pipe, mixer, burner, and stove of the plaintiffs, to be by them used for the purpose of fuel in their said stove, and the defendant negligently and

carelessly suffered and permitted a greater amount of pressure of such gas to be furnished than was proper for such purpose, and that by reason thereof, and without fault or negligence on the part of the plaintiffs or their agents contributing thereto, the plaintiffs' said building and property was destroyed by fire, then the jury should find for the plaintiffs and assess their damages occasioned by said burning in such sum as is proper under the evidence and the law as given you by the court, if you find that the plaintiffs have been damaged by the burning of the property mentioned in the complaint. (6) I instruct you that if you find from the evidence that the defendant, at the time that plaintiffs' property was burned, if you find it was burned, was, for a valuable consideration, furnishing to the plaintiffs natural gas to be used for fuel for domestic purposes, and that said defendant at the time of said burning negligently failed to provide such appliances, regulators, and machinery, and watch and care for the same, as were reasonably necessary to control the amount of pressure of said gas so furnished, and, on account of the defendant failing so to do, the plaintiffs' property was destroyed by fire, occasioned by an overheated stove, caused by said failure so to regulate the pressure of said gas, then the defendant would be liable to the plaintiffs for such damages to their property as was the direct result of such negligence, unless you should further find that the plaintiffs or their agents were also guilty of negligence which contributed to the destruction of said property. (7) I instruct you that if you find from the evidence that at the time of the burning of the property of the plaintiffs as alleged in their complaint, the defendant, for a valuable consideration, was furnishing to the plaintiffs natural gas to be used for fuel in a stove in plaintiffs' office for the purpose of heating the same, and that said defendant permitted and suffered its regulator

or regulators to be in such condition that it or they did not regulate or control the pressure thereof, and that said regulator admitted gas to said stove at a high and dangerous pressure, and that plaintiffs' stove was thereby overheated by such high and dangerous pressure, thereby causing destruction and damage to plaintiffs' said property by fire, caused by said overheated stove, and you further find that plaintiffs, and neither of them, nor their agent, were guilty of any negligence contributing to the destruction of such property, then the defendant is liable to the plaintiffs for the damages in this action. (9) I instruct you that in a case of this kind, when it is alleged that the defendant was negligent in failing properly to regulate the pressure of the gas which it was supplying to plaintiffs at the time of the alleged destruction of their property, that, under the law of this State, it is not sufficient to relieve the defendant from liability for it to show that its regulators that supplied and controlled the pressure of the gas in plaintiffs' stove were in good repair and working order, but it must go further and show that it had maintained an efficient system of inspection; that it provided a watchman or competent servant to control the pressure, when it became necessary so to do, to make said pressure safe to the life and property of its consumers. (11) I instruct you that if you find from the evidence that the plaintiffs purchased the real estate described in their complaint, and the purchase price therefor was paid by said plaintiffs, and that you further find that the plaintiffs took possession of said real estate under and by virtue of said purchase, and you find that at the time of said purchase it was agreed by and between said plaintiffs that plaintiff Whipple should take the title thereto in his own name, then I instruct you that he held title thereto for himself and in trust for his co-plaintiff, and the plaintiffs can maintain a joint action for any injury thereto."

We do not think it can be said that the concluding part of the first instruction is its controlling part. There is nothing objectionable in either the first, second, or third instructions as statements of general principles of the law applicable to the use of natural gas as a fuel. It is recognized as a dangerous, substance, and the care in its use must be commensurate with such danger. The third instruction does not purport to state what appellees must prove to authorize a recovery, but goes no further than to state that certain conduct on appellant's part is actionable negligence.

It may be that the connection of appellees' stove with the service-pipe was not made with the consent or permission of appellant had at the time; but there is evidence that appellant recognized the connection as made, and received pay for gas furnished. Appellant might waive the obtaining of its written permission to make the connection, and there is evidence from which it may be said it did so. The court properly instructed the jury in the twelfth instruction that if appellees connected their stove with appellant's pipes, and used gas without the knowledge or consent of appellant, and afterwards appellees paid appellant, at appellant's request, the amount demanded for such gas, by such payment and acceptance appellees became consumers of appellant from such time, and after such payment and acceptance appellees would have a right to use gas, unless ordered to cease by appellant.

There is evidence that appellant was supplying gas at a ten-pound pressure, and that a pressure of above eight ounces was dangerous, and that, while there were regulators to control the pressure, yet the regulators did not control the pressure until it reached ten pounds. The seventh instruction does not necessarily proceed on the theory that the regulators were out of repair. They may have been in proper repair, but were so adjusted as to per-

mit a dangerous quantity of gas to pass through. The instruction seems to proceed upon this theory, and there was evidence to which it was applicable.

The use of the word "plaintiff" in an instruction, where there are two plaintiffs to the action, is not necessarily misleading. A jury of average intelligence would certainly understand that the court meant the parties who had brought the action.

The court correctly told the jury that it was not, as a matter of law, negligent for appellees or their agent to have the gas burning in their stove during the night-time, if they used proper care and caution in turning down and adjusting the key valve, and looking after the service-pipes and appliances so as properly to regulate the gas while the same was furnished at a safe pressure. In the same instruction the jury were further told that they were to consider all the evidence, facts, and circumstances which tended to show the condition as it existed at the time of the fire, and from all such facts and circumstances they were to determine whether appellees were guilty of negligence. This instruction, with others given, left the question of appellees' negligence at the time of and before the fire with the jury.

The court, on its own motion, gave, among others, the following instructions: "(9) I instruct you that the credibility of a witness is a question exclusively for the jury. You have the right to determine from the appearance of the witness on the stand, his manner of testifying, and his apparent candor and fairness, bias, interest, or lack of interest in the case, if any should appear, his bias or prejudice, if any should appear, and from all other surrounding circumstances, if any appear on the trial, which witnesses are more worthy of credit, and to give credit accordingly. (10) I further instruct you that you are the judges of the credibility of the witnesses, and of the weight to be adjudged to the testimony of each and all of them. You are

Citizens Gas, etc., Co. v. Whipple.

not bound to take the testimony of any witness as absolutely true, and you should not do so if you are satisfied, from all the facts and circumstances proved on the trial, that such witness is mistaken in the matters testified to by him, or that for any other reason his testimony is untrue or unreasonable. I also instruct you that you are the judges of the credit that ought to be given to the testimony of the different witnesses, and you are not bound to believe anything to be a fact because a witness or witnesses stated it to be so under oath, provided you believe from all the evidence that such witness or witnesses is or are mistaken, or has knowingly testified falsely. (13) I instruct you that if, after a full and fair consideration of all the testimony, you should be unable to harmonize the statements of all the witnesses in relation to matters pertinent to the issues submitted to you, then it will be your duty to consider on which side is the preponderance of the evidence, and to find your verdict in accordance therewith."

The eleventh and twelfth instructions given by the court on its own motion were to the same effect as the above. These instructions are no more than general statements of the law concerning the credibility of witnesses and the weight of testimony. No attempt was made in any of them to apply the principles announced to any witness or witnesses who had testified. They apply to appellees' witnesses as well as appellant's. They were equally favorable to both parties. It is not made to appear that they were prejudicial to appellant.

The instructions given to the jury are very lengthy, and may contain some repetitions. Considering them as a whole, we find nothing in them authorizing a reversal of the case. From a careful consideration of the whole record, we can but conclude that the case was fairly tried, and a correct conclusion reached. We find no error in the record sufficient to reverse the case.

Judgment affirmed.