CARSON v. FORT SMITH LIGHT & TRACTION COMPANY.

Opinion delivered June 2, 1913.

1.  GAS COMPANIES—RIGHT OF CONSUMER TO USE GAS PAID FOR.—Where plaintiff has a contract with a gas company to furnish gas, upon placing a certain sum of money into a meter, when plaintiff puts that sum in the meter, he has the right to consume the amount of gas for which he has paid, as the gas became his property, with the right to consume it at its convenience.  (Page 457.)

2.  GAS COMPANIES—FAILURE TO FURNISH GAS.—Where a gas company advances its rates, and a consumer becomes liable for the new rate, the act of the gas company in turning off the gas before the time for payment under the new rate, was a wrongful and unwarranted act.  (Page 457.)

3.  DAMAGES—TORT—PROXIMATE CAUSE.—A gas company which wrongfully turns off the gas of its consumer, is answerable for all damages, directly traceable to the wrong done, and arising without an intervening agency and from no fault of the person injured.  (Page 457.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon*, Judge; reversed.

STATEMENT BY THE COURT.

John Carson and his wife sued the Fort Smith Light & Traction Company for damages, alleging that the damage resulted from the company's wrongfully turning the gas already paid for out of the meter and depriving them of the use thereof.

Appellee company is a public service corporation furnishing gas to the people of Fort Smith, it's consumers, under contract, one of whom was John Carson. The gas was being used for all purposes in his home and measured by meter, into which, upon the dropping in of a quarter, 1,000 feet of gas was delivered. The price of the gas at first was twenty-five cents per thousand feet, and under the contract or the application made by Car-

son for gas, the bills were to be paid monthly. The company gave notice of the increase of the price of gas to thirty-five cents per thousand cubic feet, effective the 1st of April. On the 19th day of April, John Carson, upon leaving home to go to his work two miles distant, left a quarter with his wife to be dropped into the meter in case the gas should be consumed before his return. A quarter's worth of gas usually lasted twenty-four hours. About noon this money was put into the meter. About 3:30 the gas company's agent came and took the money out of the meter—$3.45; changed the meter so it would thereafter register at the rate of thirty-five cents per thousand feet, and turned off all the gas, turning the meter back to zero. He could have collected the money from the meter and changed it without turning off the gas. The day was damp and cold in the morning, and Mrs. Carson had been sick for two or three weeks, and was just convalescent. Upon the fire's going out, she complained to the agent of the gas company, insisted that he should return her quarter for the gas paid for and not consumed, and was told that the gas would flow again upon dropping in another quarter. She told him she had no other quarter and called up the manager of the gas company and told him that "the fellow had taken all her money and left no gas in the meter, and that she was sick and had no fire and did not have a cent of money in the house," and the manager told her that was the instructions, to take all the money in the meter. She then rang up her husband, told him what had occurred, and he told her to try and get a quarter. She then sent her little six-year old boy to six of her neighbors to try to borrow a quarter, and failed to get one. The older boy was in school, and her sister-in-law, who was staying with her, was not acquainted in the neighborhood. There were some places in the neighborhood to which the boy did not go because the people were not her acquaintances, and she did not associate with them. After failing to get the quarter to put in the meter, she wrapped up and sat around a-while, and finally got so cold she went to

bed. She began sneezing and almost had a chill before going to bed. She had been sick in bed before for three. weeks, and was just recovering. Her lungs began to fill up, and by night, she had a pronounced case of asthma, and was in a very bad condition.

Her husband returned home at about 7 o'clock, and put a quarter in the gas meter and gas was immediately supplied. He also got medicine for her; they were not able to get the physician there until the next day. She did not lie down that night, and for about three months thereafter was sick and could not lie down to sleep, but had to sit propped up, and she still sleeps about as much sitting up in bed as she does lying down.

The physician testified that she had been suffering from grippic bronchitis, for which he attended her about two weeks, and that she had gotten better and been discharged as a patient, and when he was called again to see her, he found her suffering with asthma, with which she is still affected.

On that day the weather bureau statistics show the temperature was, at 7 A. M., 49 degrees; at 12 noon, 61 degrees; at 2 P. M., 68 degrees; at 3 P. M., 72 degrees; at 4 P. M., 75 degrees; at 5 P. M., 70 degrees; at 6 P. M., 66 degrees, and at 7 P. M., 65 degrees.

The company's agent, who changed the meter, said Mrs. Carson asked him why he turned the gas off, and he explained to her, "Because she had been using it nineteen days on the twenty-five-cent rate, and other people paid thirty-five cents. She did not understand me, and seemed to be a little bit mad, and I told her to call up Mr. Parker, and she did so, and came back and told me all right."

The testimony shows that twenty-five cents worth of gas, 1,000 feet, usually lasted the family twenty-four hours, and that it had only been burning from 12 until 3:30 o'clock after the last quarter was dropped in. The man changing the meter register testified, however, that there was only about ten cents worth of gas in the meter not consumed when he changed it and turned it back to zero.

The court instructed a verdict for the defendant, and from the judgment thereon, this appeal comes.

*J. A. Gallaher,* for appellants.

1. The court erred in excluding the contract sought to be introduced in evidence by plaintiffs.

2. A peremptory instruction to find for the defendant was an invasion of the province of the jury. 10 Cyc. 350; 105 Ark. 136.

3. The contract to furnish gas was never changed from twenty-five cents to thirty-five cents per 1,000 cubic feet. The corporation could change the price of the gas only on January 1 or July 1. Act 282, Acts 1905; 91 Ark. 89-92.

4. That appellee had the right to take out the money in the depository of the meter, at any time, is admitted; but it was not necessary to stop the flow of the gas in order to extract this money, and when, in addition to withdrawing the money, appellee stopped the flow of gas that the last deposit had paid for, it committed a wilful tort. Cooley on Torts, 60, 69.

5. What constitutes ordinary care is a question for the jury. 13 Cyc. 71; *Id.* 76; 150 S. W. 348.

6. Appellee knew when it cut off the gas that it was committing a wrongful act. Appellants are entitled, therefore, to exemplary damages. Hale on Torts, 34. The refusal or failure of a public service corporation to furnish gas which it has contracted to furnish to its patrons is a tort. 146 Ind. 655; 36 L. R. A. 539; 46 N. E. 17; 6 L. R. A. (N. S.) 1171.

*Hill, Brizzolara & Fitzhugh,* for appellee.

Plaintiff admits that the price of gas had been increased to thirty-five cents per thousand on the 1st of April; that she knew of this advance in price; that she had gotten about 18,000 feet of the gas, on which she had paid only twenty-five cents per thousand. When appellee removed the money from the meter, it left appellant still indebted to appellee, for gas used, in the sum of $1.28. Appellee acted within its legal rights in taking the money

from the meter, and was guilty of no negligent, careless or wrongful act.

KIRBY, J., (after stating the facts). The testimony is undisputed that the appellee company had been furnishing gas to appellants at 25 cents per thousand cubic feet and had the right to change the price thereof upon notice to its customers and that the notice of the change in price to take place on April 1 had been duly given to appellants; that appellants were upon a slot meter which measured 1,000 feet of gas for consumption upon dropping a quarter into it; that John Carson's wife, upon the day the meter was changed, put a quarter into it about noon; and at 3:30 appellee's agent "robbed the meter;" that is, collected the money therefrom—$3.45; changed the meter to register according to the new price fixed for gas and turned it back to zero, turning out all the gas therein. The company's agent, at the time the appellant complained of his action in shutting off the gas, said his instructions were to do so and that it was because they had been burning gas from the first to the nineteenth of the month at the old rate of 25 cents and owed the difference, and that the gas would continue to be furnished at the new rate upon dropping the quarter in the meter as usual.

Appellants had not been notified that they were behind with the payment of their gas bills nor that the gas would be shut off on that account, and it was the custom of the company and the terms of the contract required that the bills should be paid monthly, nothing being said in it about the slot meter. In any event, it can not be questioned that appellants had the right upon putting the quarter into the meter to consume the amount of gas for which it paid and when it was so deposited and the gas turned into the meter, it was delivered to them and became their property with the right to consume it at their convenience, so long as the terms of the contract were not violated in so doing. *Chouteau* v. *St. L. Gas Light Co.*, 47 Mo. Appeals, 326; *Schmeer* v. *Gas Light Co.*, 147 N. Y. 529; 42 N. E. 202; 30 L. R. A. 653;

*Blondell* v. *Gas Co.,* 89 Md. 732; 43 Atl. 817; 46 L. R. A. 187.

It may be true that the gas company had the right under its contract to shut off the supply of gas to appellants to compel the payment of amounts already due for gas consumed, or furnished, but it could not do so until after giving notice in accordance with the terms of the contract, and certainly with the slot meter in use and the money deposited therein for the payment of 1,000 cubic feet of gas according to the old price, and of that much upon the price of a thousand feet according to the last rate fixed, it had no right to turn the gas already delivered to appellants out of the meter. If according to the usage they were entitled to continue to consume one thousand feet of gas for each quarter deposited in the meter until the meter could be changed to register in accordance with the advanced price, which we do not decide, the gas in the meter was already paid for, and if it can be said they should be held to the payment of the advance price for all the gas consumed since they were notified it should go into effect, then they would only have owed for the difference in the price, which would have been collected on the first of the succeeding month and could not have warranted their agent in turning the gas already delivered in the meter out. It was as much a wrongful act as if he had taken or destroyed any other of the personal property or effects of these appellants in their home.

It was a tort, pure and simple, committed without justification or excuse, and for which the gas company should be held answerable for all damages directly traceable to the wrong done and arising without an intervening agency and from no fault of the persons injured. *Coy* v. *Indianapolis Gas Co.,* 146 Ind. 665; 46 N. E. 17; 36 L. R. A. 535; *Indiana Gas Co.* v. *Anthony,* 26 Ind. App. 307; 58 N. E. 868; Thornton, Oil & Gas, § 534.

The question of damages is not affected by reason of the fact that it can be said that such a condition as resulted from the turning off of the gas could not have

been within the contemplation of the parties under the contract and duty of the company to supply it, since the action arises out of its wrongful conduct in turning out the gas already delivered which may also have constituted a breach of the contract to furnish.

The evidence is conflicting as to the amount of gas already measured by the meter that was turned out, appellee claiming that only 10 cents worth remained unconsumed while appellants claim that the gas paid for should have lasted twenty-four hours and had only been burning three.

It is true it is undisputed that the gas was not disconnected from the premises and that it would have continued to be supplied upon the dropping of another quarter into the meter, and also that appellant's husband had another quarter and was notified of the condition immediately after the gas was turned out but did not regard it of sufficient moment to come and bring or send the money with which to purchase more gas to comfortably heat the dwelling, and that her efforts to procure it in the neighborhood were fruitless.

These views, which are concurred in by the majority of the judges, Mr. Justice SMITH dissenting, settle the law of the case and call for reversal of the judgment. An agreement can not, however, be reached by the majority in the application of the law to the facts of the case. The writer and Mr. Justice WOOD are of the opinion that under the law stated above the proof is sufficient to show substantial injury to appellant as the proximate result from appellee's wrongful act and that the cause should be remanded for a new trial.

The conclusion of the CHIEF JUSTICE and Mr. Justice HART is that the alleged wrongful act was not the proximate cause of the injury, which they think resulted from appellant's own failure to minimize the damages by procuring from her husband, or some one else, the trifling sum necessary to pay for more gas, and that she should only be allowed to recover nominal damages, for recovery of which causes are not remanded.

Mr. Justice SMITH is of the opinion that the judgment should be affirmed.

Thus it will be seen that four of the judges agree to the reversal of the judgment, but only two of them favor remanding the cause for a new trial.

From an adjustment of the views of all the judges the only net result that can be extracted is that the judgment must be reversed, but the cause will not be remanded for a new trial. Appellant is, therefore, entitled to a judgment for nominal damages. So it is ordered that the judgment be reversed, and that judgment be entered here in favor of appellant for nominal damages, which carries judgment for costs in both courts.

SMITH, J., dissenting. No question is made as to appellee's right to increase the price of gas, nor is it questioned that appellants knew the price had been increased. The increased rate became effective on April 1, and unless some discrimination was practiced, all users of gas should thereafter have paid at the rate of 35 cents per thousand cubic feet and that was, of course, the rate which appellants should have paid; and the mere fact that the meter had not been changed gave them no right to be furnished gas at a price less than that charged all other consumers. Appellee had the right to change the meter at any time after the 1st of April, and the fact that it had not changed the meter prior to the 19th of April was no reason why it should not then be changed. In my view, no cause of action arose for changing this meter and for taking the money therefrom, the amount of which admittedly was insufficient to pay for the gas which had already been consumed when charged for at the rate of 35 cents per thousand cubic feet, and for these reasons I think the judgment should be affirmed.

However, if this view of the law is not correct, the appellants were entitled to recover any damages sustained by them; and if their evidence is to be believed, that damage was not merely nominal but very substantial. And there was enough proof, in my opinion, to send to the jury the question of appellant's discharge of their duty to minimize the damages.