OKLAHOMA NATURAL GAS CO. v. PACK. SAME v. MADISON.

*97 P. 2d 768.*

No. 28766.  Nov. 7, 1939.

Rehearing Denied Dec. 12, 1939.

Application for Leave to File Second Petition for Rehearing Denied Jan. 16, 1940.

Underwood, Canterbury, Pinson & Lupardus, of Tulsa, for plaintiff in error.

Amos T. Hall, of Tulsa, for defendants in error.

RILEY, J. Phyllis Madison, a minor, by her mother and next friend, Laverta Madison, filed suit in a justice court, recovering judgment against the Oklahoma Natural Company. The cause was appealed to the court of common pleas of Tulsa county. It was consolidated with a case entitled Addie Pack v. Oklahoma Natural Gas Company. Judgment was for plaintiff in each case, and the defendant, Oklahoma Natural Gas Company, has appealed both cases, and under stipulation the causes here have been consolidated. The parties will be referred to as plaintiffs and defendant, as they appeared below.

On January 19, 1937, Laverta Madison maintained a home in Tulsa. With her lived her minor daughter, Phyllis Madison, and her mother, Addie Pack. Prior to said date the home had been supplied by defendant with natural gas for fuel. About 5 a. m. on said date, the gas supply failed in the home. Defendant was notified, and about 8 o'clock its employees began work and re-established the flow of gas. During the day the gas supply failed several times and each time defendant's workmen re-established the flow. The same was true on the 20th, 21st, and 22nd of January. On the last date defendants laid an emergency surface line to the home, after which the supply of gas was ample.

Immediately prior to and during the above dates, the weather was extremely cold.

Plaintiffs alleged that the defendant's pipe line had been in the ground for ten to twelve years, had become rusted and worn to the extent that holes had been made in the pipe; that water had seeped in; that the meter located at plaintiff's house was old and worn; that water and moisture in the pipes had collected in the meter and become frozen, thereby hindering and preventing entrance of gas into plaintiff's house; that defendant failed and neglected to install approved appliances and devices in its lines to prevent collection of moisture, and that as soon as defendant became aware of the defective condition of the line leading to plaintiff's house it could have and should have by the exercise of ordinary care laid a temporary line to plaintiff's house.

The evidence showed that plaintiff's house was the last house on the street; that defendant's line ran down hill for some distance from the main line and dead-ended about four or five feet beyond the service connection to plaintiff's house; that the line had been in the ground for about ten years; that when the plug in the dead end was removed on the 19th, water drained out of the line; that the plug had not been removed and the line drained since it was installed; that the plug was replaced with a draincock; that on the various trips to plaintiff's house defendant's

workmen drained water from the line through this draincock and heated the meter with blow torches, after which the flow of gas would be re-established for a short while only to become insufficient again.

There was conflict in the evidence concerning the installation, operation, and inspection of 'drips to collect and drain off the water deposited in the gas pipes.

It was shown that after several unsuccessful attempts to re-establish the flow of gas to plaintiff's house, a new meter was installed, but this afforded only temporary relief, and on the fourth day a temporary surface line was laid, after which no trouble was experienced.

The evidence further showed that Phyllis Madison showed symptoms of a cold late Tuesday evening and on Wednesday a doctor was called, by which time she had developed a high temperature; the doctor advised against her removal to another house during the inclement weather; that she was confined to her bed for a period of two weeks. Addie Pack, who cared for Phyllis during the daytime, showed symptoms of illness Thursday evening, and on Friday the doctor was called and she was confined to her bed for over a period of two weeks.

The actions were tried as tort actions. This, defendant contends, was error because the action by plaintiff, if any exists, is simply an action for breach of an agreement to deliver personal property, the measure of damages for which is prescribed by section 9971, O. S. 1931, 23 Okla. St. Anno. § 29, and section 9996, O. S. 1931, 23 Okla. St. Anno. § 92.

Defendant correctly contends that there was a contractual relationship between the plaintiffs and defendant. The latter had entered into a contract to supply and had been supplying the house of Laverta Madison with gas. The plaintiffs were at least beneficiaries of that contract. Inter-Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. 2d 399. But the contention that plaintiffs are limited

to an action for breach of a contract is incorrect.

In 1 R.C.L. 321, it is stated:

"As has been seen a duty or obligation, the violation of which gives rise to a cause of action, may be created by contract or by positive law independent of contract. There is a broad distinction between causes of action arising ex contractu and ex delicto, and a mere matter of contract cannot be converted into a tort. But there may be a duty imposed by law, by reason of the relation of the parties, although the relation was created by contract, and when this is so, a neglect to perform this duty gives the injured person a right of action, and he may elect to sue upon the contract, or treat the wrong as a tort, and bring an action ex delicto."

This rule was recognized by this court in the case of Chicago, R. I. & P. Ry. Co. v. Harrington et al., 44 Okla. 41, 143 P. 325.

The question, then, is, Was there a duty imposed by law because of the relationship existing between the defendant and the plaintiffs?

The further rule is stated in 1 R.C.L. 322:

"* * * Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract."

The rule last cited has been applied in numbers of cases and is the decided weight of authority. See Flint Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, and the annotation thereto in 12 L.R.A. (N. S.) 924. The above annotation is restricted to contracts between individuals in their private capacity where no services were offered to the public generally. But see Conn v. Hunsberger, 224 Pa. St. 154, 73 Atl. 324, 16 Ann. Cas. 504, and the annotation thereto in 25 L.R.A. (N. S.) 372.

If the duty to use due care, skill, and reasonable expediency in the performance of the contract is implied by law in

contracts between individuals, a fortiori it should be implied in cases where the defendant is a public utility furnishing services to the public while operating in a monopolistic capacity.

It has been held that the breach of the duty to supply gas to a consumer is a tort and damages may be recovered for all injuries of which the breach was the proximate cause. Coy v. Indianapolis Gas Co., 146 Ind. 655, 46 N. E. 17, 36 L.R.A. 535; Carson v. Ft. Smith Light, etc., Co., 108 Ark. 452, 158 S. W. 129, Ann. Cas. 1915B, 92, and note.

"Even without and before the contract, it was the duty of the company to attach its mains to appellant's house pipe, on being requested to do so by him, and on his compliance with the reasonable conditions imposed by the company. Nor would it be enough to make such connections without also supplying the gas therefor. Not a partial, but a full, compliance with the company's duty is required, and this without any discrimination as to persons having a right to the gas."

Where a gas company operating as a public utility undertakes to supply a consumer with gas, it assumes the further duty of using care, diligence, and reasonable expediency in maintaining, repairing, inspecting, and operating its equipment and lines so that an adequate supply of gas will be available.

The above discussion disposes of plaintiff's contentions except that, under the undisputed evidence, the damages alleged are not the proximate result of the alleged negligence.

In Inter-Ocean Oil Co. v. Marshall, supra, it was said that whether exposure to cold resulting when defendant turned off gas in house was proximate cause of miscarriage of pregnant woman was a question for expert medical witness.

We have examined the record, and find a conflict between the testimony of the doctors who testified for the respective parties. The attending physician testified the failure of the gas and the consequent low temperature of the house caused the cold. The defendant's physician testified that he did not think the room being cold of its own accord would cause the cold, because other circumstances would have to be considered.

In Oklahoma Nat. Gas. Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235, it was held the question of whether or not the defendant's negligence is the proximate cause of the injury sustained should be left to the jury, where the evidence is conflicting, or where men of ordinary intelligence might differ as to the effect of the evidence on the point.

The case was properly submitted to the jury, and the judgment of the lower court based thereon is affirmed.

BAYLESS, C. J., and OSBORN, CORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., absent.