ABERCROMBIE & FITCH STORES INC. v. PENN SQUARE MALL LIMITED PARTNERSHIP



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ABERCROMBIE & FITCH STORES INC. v. PENN SQUARE MALL LIMITED PARTNERSHIP

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ABERCROMBIE & FITCH STORES INC. v. PENN SQUARE MALL LIMITED PARTNERSHIP
2018 OK CIV APP 56
Case Number: 116008
Decided: 08/10/2018
Mandate Issued: 09/05/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 56, __ P.3d __

 

ABERCROMBIE & FITCH STORES, INC., Plaintiff/Appellee,
v.
PENN SQUARE MALL LIMITED PARTNERSHIP, Defendant/Appellant,
and
JOHN DOES 1-10, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

AFFIRMED

Mark T. Steele, Scott F. Lehman, LATHAM, WAGNER, STEELE & LEHMAN, P.C., Tulsa, Oklahoma, for Plaintiff/Appellee

Thomas G. Wolfe, Catherine L. Campbell, Clayton D. Ketter, PHILLIPS MURRAH P.C., Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This case arises from a water leak in a roof drain line running above the ceiling of leased premises in a shopping mall. Abercrombie & Fitch Stores, Inc., the occupant of the leased premises, filed suit against Penn Square Mall Limited Partnership alleging Penn Square "had a contractual duty to maintain the mall's plumbing lines in good order, condition, and repair," and that Penn Square breached this duty. Abercrombie asserted theories of breach of contract and negligence against Penn Square, asserted that as a result of the water leak it "incurred substantial damages in cleanup, repair, lost merchandise, lost profits, and interruption to its business," and sought damages in excess of $300,000.[1]

¶2 Following a jury trial, the jury found in Abercrombie's favor, though it also found Abercrombie to be contributorily negligent. The trial court's order memorializing the decision of the jury states:

 

After hearing the evidence and due deliberation, the jury returned with a unanimous verdict as follows:

1. Contribution negligence as to [Abercrombie] 40% and [Penn Square] 60%. Damages set in the sum of $243,000. The Court [therefore reduces] the damages by 40% of [Abercrombie's] contributory negligence and [finds] [Abercrombie's] damages to be $145,800.

2. Breach of contract in favor of [Abercrombie]. Damages set in the sum of $0.00.

The order concludes by stating that "judgment in all respects is awarded and entered in favor of [Abercrombie] as to its claim for negligence in the amount of $145,800, [and] its claim for breach of contract in the amount of $0.00[.]"

¶3 Penn Square appeals. In particular, Penn Square challenges the trial court's denial of its motion for directed verdict, and Penn Square also asserts on appeal that the trial court erred in its approval of certain jury instructions.

STANDARD OF REVIEW

¶4 In determining whether a trial court erred in denying a motion for directed verdict, "[w]e consider as true all evidence favorable to the non-moving party together with all inferences that may be reasonably drawn therefrom, and we disregard all conflicting evidence favorable to the moving party"; such a motion "should not be granted unless there is an entire absence of proof on a material issue." First Nat. Bank in Durant v. Honey Creek Entm't Corp., 2002 OK 11, ¶ 8, 54 P.3d 100 (citation omitted).

¶5 "When reviewing jury instructions, we look at whether the probability arose that the jurors were misled and reached a different conclusion due to an error in the instruction given." CNA Ins. Co. v. Krueger, Inc., of Tulsa, 1997 OK 142, ¶ 14, 949 P.2d 676 (citation omitted).

In reviewing the propriety of given instructions, the instructions are to be viewed in whole rather than separately. And, where it appears that instructions taken as a whole do not establish that the jury was misled or that complaining parties' rights were prejudiced, the verdict will not be set aside. Instructions are sufficient when, considered as a whole, they present the law that is applicable to the issues.

Id. ¶ 15 (citation omitted).

ANALYSIS

I. A duty derived from a contractual relationship may properly form the basis of a negligence theory.

¶6 Penn Square asserts that the elements of duty and breach of duty in a negligence action[2] cannot be founded upon a duty derived from a contractual relationship. For example, Penn Square asserts that "to maintain a claim for negligence, a claimant must establish the breach of a duty that exists at common law" and that is "independent of the breach of contract." Penn Square asserts that if the duty in question would not exist apart from a contract or contractual relationship, then the only available theory is breach of contract. In this regard, Penn Square states that "Abercrombie utterly failed to introduce any evidence that Penn Square breached a duty independent of the breach of contract," and further states that

Abercrombie repeatedly makes reference [in its Answer Brief] to the contractual duty to keep plumbing lines in good order, condition, and repair -- a duty that arises solely out of the Lease. If Penn Square failed to keep the lines in good order and repair, Abercrombie's only remedy would be under a breach of contract action.

Penn Square summarizes its argument as follows: "While Abercrombie's assertion that Penn Square failed to comply with the contractual obligation to keep the [water] lines in good order and repair may give rise to a claim for breach of contract, the breach of that contractual duty does not give rise to a tort claim."

¶7 However, the Oklahoma Supreme Court has explained that "[a]ccompanying every contract is a common-law duty to perform it with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." Keel v. Titan Const. Corp., 1981 OK 148, ¶ 14, 639 P.2d 1228 (emphasis added) (footnote omitted). In Finnell v. Seismic, 2003 OK 35, 67 P.3d 339, the Oklahoma Supreme Court similarly explained:

Oklahoma law has long recognized that an action for breach of contract and an action in tort may arise from the same set of facts. . . . [I]nherent in every contract [is] a common-law duty to perform its obligations with care, skill, reasonable experience and faithfulness. A person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach-of-contract or tort theory, or both[.][3]

Id. ¶ 13 (emphasis added) (footnotes omitted). See also Gaasch v. St. Paul Fire & Marine Ins. Co., 2018 OK 12, ¶ 18, 412 P.3d 1151 ("An action for breach of contract and an action in tort may arise from the same set of facts and a person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach of contract or tort theory, or both." (citing, inter alia, Finnell)).[4] Pursuant to the reasoning in Finnell and Keel, we reject Penn Square's argument that the duty derived from the parties' contractual relationship could not form the basis of Abercrombie's negligence theory.[5]

¶8 Moreover, the parties' contract expressly provides that claims for negligence are not waived. The contract provides that the parties "shall not be liable for, and the other party waives, all claims for damage to person and property sustained by the other party . . . resulting from any accident or occurrence in or upon the demised premises or any part of the Shopping Center, except for the willful acts, negligence or default under this lease of a party or its agents and employees, and except for a party's failure to make repairs . . . ." (Emphasis added.)

 

¶9 Consequently, we conclude the trial court did not err in denying this portion of Penn Square's motion for directed verdict, and we conclude the trial court did not err in providing the jury with a negligence instruction.

II. The provision in the parties' contract excluding certain damages does not apply to damages ex delicto and, even if it did, no error occurred.

¶10 Penn Square points out that the parties' contract contains the following language: "In no event shall either party be liable for indirect or consequential damages." Cf. Black's Law Dictionary (10th ed. 2014) (Defining consequential damages as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act. -- Also termed indirect damages."). Penn Square asserts that all of the damages claimed by Abercrombie were consequential damages and that only the costs required "to stop the leak are considered direct damages[.]" Penn Square asserts Abercrombie should therefore not have been awarded any damages.

¶11 Indeed, it appears Penn Square may have been successful in this regard because the jury awarded zero damages to Abercrombie for breach of contract. However, the jury did award damages for negligence, and we disagree with Penn Square to the extent it is arguing the limitation on damages contained in the parties' contract applies to the award of damages for negligence.

A breach of contract is a material failure of performance of a duty arising under or imposed by agreement. Although torts may be committed by parties to a contract, a tort is a violation of a duty imposed by law independent of contract. If the contract is merely the inducement which creates the occasion for the tort, the tort, not the contract, is the basis of the action. A common law duty to perform with care, skill, reasonable expediency, and faithfulness accompanies every contract. Negligent failure to observe any of these conditions will give rise to an action ex delicto as well as an action ex contractu.

Lewis v. Farmers Ins. Co., 1983 OK 100, ¶ 5, 681 P.2d 67 (citing Okla. Nat. Gas Co. v. Pack, 1939 OK 475, 97 P.2d 768).[6] As in the present case, "there may be a duty imposed by law, by reason of the relation of the parties," and "although the relation was created by contract," there remains "a broad distinction between causes of action arising ex contractu and ex delicto[.]" Pack, ¶ 11 (citation omitted). With regard to the latter, "damages may be recovered for all injuries of which the breach was the proximate cause." Id. ¶ 17 (citations omitted).

¶12 Nevertheless, contractual provisions may, under certain circumstances, restrict tort recovery. Indeed, in Oklahoma, parties may contract to avoid any and all liability for ordinary negligence. See Combs v. W. Siloam Speedway Corp., 2017 OK CIV APP 64, ¶ 7, 406 P.3d 1064 ("The Oklahoma Supreme Court has long recognized that exculpatory contracts, i.e., a contract to avoid liability for damages . . . , may be valid and enforceable." (citation omitted)). However, in the context of exculpatory contracts, the "language must evidence a clear and unambiguous intent to exonerate the would-be defendant from liability for the sought-to-be-recovered damages[.]" Combs, ¶ 8 (quoting Schmidt v. United States, 1996 OK 29, 912 P.2d 871). Similarly, agreements to indemnify a party against its own negligence are enforceable in Oklahoma, but the intent to do so must be expressed "in unequivocally clear language." See Am. Energy-Permian Basin, LLC v. ETS Oilfield Servs., LP, 2018 OK CIV APP 44, ¶ 18, 417 P.3d 1282.

¶13 In confronting circumstances similar to those presented here, where a contract contains a provision prohibiting certain kinds of damages and the issue raised is whether that limitation applies to tort recovery, other jurisdictions have similarly concluded that such language may be applicable to tort recovery, but only if the provision in question unambiguously and clearly signals the parties' intent to restrict tort recovery. See, e.g., Kaste v. Land O'Lakes Purina Feed, LLC, 392 P.3d 805, 811 (Or. Ct. App. 2017). We find this approach to be consistent with Oklahoma law.

¶14 Turning to the provision itself,

[a]s other courts have recognized, the phrase "consequential damages" ordinarily refers to contract damages, not tort damages. Berwind Corp. v. Litton Industries, Inc., 532 F.2d 1, 7 (7th Cir. 1976) ("[T]he use of the words 'consequential damages' refers to contract rather than tort damages."); Starr v. Dow Agrosciences LLC, 339 F. SupP.2d 1097, 1101 (D. Or. 2004) (concluding that contractual limitations on recovery of consequential damages did not bar recovery on negligence claims).

Kaste, 392 P.3d at 811. See also Macal v. Stinson, 468 N.W.2d 34, 35-36 (Iowa 1991) ("Two types of damages may be awarded in breach of contract actions, general damages and special or consequential damages."). By contrast, in tort actions, "[w]hen there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed," Restatement (Second) of Torts § 903 cmt. a (1979), and, in tort actions, "[t]he recovery of damages for pecuniary harm is restricted by the rules as to causation," id. at § 906 cmt. a. See also Black's Law Dictionary (10th ed. 2014) (Defining compensatory damages as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered."). In the present case, the limitation in the parties' contract refers to contract damages, not tort damages, and the language in question does not unambiguously and clearly signal an intent to restrict tort recovery. Consequently, we conclude the language does not apply.

¶15 Finally, even assuming, arguendo, the "indirect or consequential damages" limitation applies to the negligence claim, here the jury was instructed to award only those damages which were "directly caused" by the negligence. For example, the jury was instructed that "when a lessor/Landlord fails to keep in good order, condition or repair the plumbing the lessor is then liable for injuries directly caused by its failure to maintain." (Emphasis added.) The jury was also provided with an instruction on direct damages, and the jury was not instructed to award indirect or consequential damages. Thus, no error occurred in this regard.[7]

 

III. The statute of repose is inapplicable to the issues. 

 

¶16 Finally, Penn Square argues that any claim for negligence based on the construction of the drain line is barred by the statute of repose. Penn Square bases this argument on 12 O.S. 2011 § 109, which bars tort actions "for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property" brought more than ten years after the completion of the construction, as well as on the fact that Abercrombie appears to have alleged in its petition, filed more than ten years after construction of the drain line, that Penn Square was negligent in, among other things, the construction and installation of the plumbing line.

¶17 However, in the pretrial conference order, Abercrombie merely asserted that Penn Square breached its duty to maintain the mall's plumbing lines, and no mention is made in the pretrial conference order, or in the subsequent jury instructions, that Penn Square was negligent in the construction or installation of the drain line. See Okla. Dist. Ct. R. 5(I), 12 O.S. Supp. 2013, ch. 2, app. (The pretrial conference order "shall control subsequent course of the action unless modified by a subsequent order," and "[t]he contents of the pretrial order shall supersede the pleadings and govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice." (emphasis added)); Corman v. H-30 Drilling, Inc., 2001 OK 92, ¶ 13, 40 P.3d 1051 ("Under Rule 5(I) any issue not identified in the pretrial order will not be considered unless it is permitted to prevent 'manifest injustice.'" (emphasis added)).

¶18 Indeed, it is undisputed that the drain line was installed in 1995, and that the leak did not occur until approximately eighteen years later in 2013. As Abercrombie asserts its claims concern Penn Square's failure to maintain and inspect its plumbing lines, not the construction or installation of the drain lines, and the statute of repose is inapplicable. See also CNA Ins. Co., 1997 OK 142, ¶ 15 ("Instructions are sufficient when, considered as a whole, they present the law that is applicable to the issues.").

¶19 We are not persuaded that the statute of repose is applicable. Consequently, we conclude the trial court did not err in failing to grant Penn Square's motion for directed verdict on the basis of the statute of repose, or in failing to provide the jury with a statute of repose instruction.

CONCLUSION

¶20 We conclude the trial court did not err in denying Penn Square's motion for directed verdict, and we also conclude the trial court adequately instructed the jury. Consequently, we affirm.

¶21 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] In the jury instructions it is stated:

The parties agree that on October 20, 2006, Abercrombie entered into a lease with Penn Square to occupy retail space within Penn Square Mall. The parties further agree that on the morning of June 5, 2013, an overhead pipe leaked into the Abercrombie store causing damage to the store and merchandise.

Abercrombie alleges that . . . Penn Square breached its contractual duty to maintain the pipe. Abercrombie also alleges that Penn Square negligently maintained its premises, specifically the pipe in question. . . .

[2] To establish a prima facie case of negligence, a plaintiff must show: "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." Smith v. City of Stillwater, 2014 OK 42, ¶ 22, 328 P.3d 1192 (citations omitted). Thus, "[a]mong the traditional elements of the tort of negligence are that there must be (1) a duty owed by one person to another, and (2) a breach of that duty. The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed." Wofford v. E. State Hosp., 1990 OK 77, ¶ 8, 795 P.2d 516 (internal quotation marks omitted) (citations omitted).

[3] The Finnell Court further explained that if both theories are pursued -- as occurred in the present case -- and "if the evidence supports both," then "the claimant can achieve but a single recovery." Id. ¶ 13 (footnote omitted). However, it does not appear, and Penn Square does not assert, that Abercrombie achieved anything other than a single recovery in this case.

[4] We note that Penn Square relies on an Oklahoma Court of Civil Appeals decision -- Chase v. Paul Holt Drilling, Inc., 1975 OK CIV APP 9, 538 P.2d 217 -- which predates both Keel and Finnell. In Chase, a separate division of this Court did conclude that the trial court erred in providing the jury with a negligence instruction where the alleged breach of duty was "founded on the breach of a rotary drilling contract[.]" Chase, ¶ 1. However, as far back as at least 1939, the Oklahoma Supreme Court has relied on the same reasoning found in Keel and Finnell. See, e.g., Okla. Nat. Gas Co. v. Pack, 1939 OK 475, ¶¶ 9-14, 97 P.2d 768 (The Pack Court concluded that although "there was a contractual relationship between the plaintiffs and defendant," "the contention that plaintiffs are limited to an action for breach of a contract is incorrect."); but see Gaasch, 2018 OK 12, ¶ 17 (Citing a 1915 Oklahoma Supreme Court case, the Gaasch Court explained that, "[h]istorically, when an action is a claim which seeks to recover for unliquidated damages for a personal injury caused by negligence, although the negligence complained of amounts to a breach of contract on the part of the defendant, the action is one ex delicto and the law of torts governs that claim."). In addition, the reasoning in Chase is unpersuasive. The Chase Court stated that "[i]n the context used the word 'negligent' is really a superfluous adjective describing the reason for defendant's alleged failure to fulfill its contractual obligations. We say superfluous because if indeed defendant breached the contract, it is immaterial whether it did so negligently or otherwise." 1975 OK CIV APP 9, ¶ 20. While it is true that a plaintiff can achieve but a single recovery, see n.3, supra, we disagree that an allegation of breach of contract renders a negligence theory arising from the same facts superfluous such that a jury cannot be instructed regarding both theories. Applying the logic in Chase, the opposite could just as easily be said. However, rather than having the trial court arbitrarily determine which of the two theories it deems to be "superfluous" prior to submission of the instructions to the jury, the Oklahoma Supreme Court has determined, as quoted above, that "[a] person injured by the substandard performance of a duty derived from a contractual relationship may rely on a breach-of-contract or tort theory, or both[.]" Finnell, ¶ 13. We are bound by the decisions of the Oklahoma Supreme Court. See, e.g., Sweeten v. Lawson, 2017 OK CIV APP 51, ¶ 24 n.11, 404 P.3d 885 ("It is axiomatic the Court of Civil Appeals cannot overrule an opinion of the Oklahoma Supreme Court and we are thus bound by its previous decisions." (citation omitted)).

Finally, it should also be noted that Chase was decided prior to important changes to the Oklahoma Pleading Code. The Chase Court appears to have based its conclusion, at least in part, on a close reading of the language used in the plaintiff's petition in that case, which failed to "contain any allegation relating to the breach of a common law duty by defendant." Chase, ¶ 20 This portion of the reasoning in Chase (which was decided in 1975) is at odds with "[t]he Oklahoma Pleading Code, 12 O.S. 2001 §§ 2001 et seq. . . . adopted in 1984 to replace form pleading requirements." Wilson v. Webb, 2009 OK 56, ¶ 9, 221 P.3d 730 (footnote omitted). Under the Oklahoma Pleading Code,

pleadings should give fair notice of the claim and be subject to liberal amendment, should be liberally construed so as to do substantial justice, and that decisions should be made on the merits rather than on technical niceties. The Pleading Code rejects the approach that pleading is a game of skill in which one misstep is decisive to the outcome, but instead accepts the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Id. (footnotes omitted). See also Estate of Hicks ex rel. Summers v. Urban E., Inc., 2004 OK 36, ¶ 15, 92 P.3d 88 ("In Finnell we said that the court will craft the available relief that is justified by the facts. We stated that notice pleading requires of the petition only that it give fair notice of the plaintiff's claim and the grounds upon which it rests. This regime abolishes any requirement that a litigant correctly identify a theory of recovery or describe the remedy affordable for vindication of asserted rights.").

[5] The Oklahoma Supreme Court has noted that "in ordinary commercial contracts, a breach of good faith and fair dealing generally merely results in damages for breach of contract, not independent tort liability." James v. Tyson Foods, Inc., 2012 OK 21, ¶ 16 n.16, 292 P.3d 10 (citation omitted). We interpret this statement to mean that, as acknowledged by the Supreme Court in a separate case cited by Penn Square, "[c]onduct that is merely a breach of contract is, of course, not a tort." Hall Jones Oil Corp. v. Claro, 1969 OK 113, ¶ 9, 459 P.2d 858. In other words, even where all the elements of a breach of a contract theory have been met in a case, the elements of a negligence theory may not be met, and vice versa. Cf. Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834 (The elements of a breach of contract theory are: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." (footnote omitted)), and Robinson v. Okla. Nephrology Assocs., Inc., 2007 OK 2, ¶ 9, 154 P.3d 1250 (The elements of a negligence theory are: "(a) a duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." (citation omitted)). The present case appears to be one in which the breach of contract and negligence theories dovetailed with regard to the creation of a duty because Penn Square agreed, under the Lease, "to maintain all common areas . . . of the Shopping Center in good order, condition and repair and in a safe, clean, sightly and sanitary condition in accordance with good, current from time to time and generally accepted shopping center management practices." But this does not mean, as Penn Square suggests, that Abercrombie was limited to a breach of contract theory.

[6] In line with the Oklahoma decisional law discussed herein, the Supreme Court of Texas explained long ago that a tort

is generally described as a wrong independent[] of a contract, though it is conceded that a tort may grow out of, make a part of, or be coincident with, a contract. So the same state of facts, between the same parties, may admit of an action ex contractu or ex delicto. In such cases the tort is dependent upon, while at the same time independent of, the contract.

Shirley v. Waco Tap R.R. Co., 10 S.W. 543, 549 (Tex. 1889) (internal quotation marks omitted) (citations omitted).

[7] We note that the jury was instructed as to lost profits as follows: "Lost profits that are found to have occurred directly or proximately . . . are direct damages and may be recoverable. If you find that the lost profits were not directly or proximately caused from a breach of contract or negligence you may not award them." Penn Square summarily argues that "[a]s a matter of law, lost profits constitute consequential damages." However, it cites to only two cases of the United States Court of Appeals for the Tenth Circuit in support of this argument. In response, Abercrombie cites to two Oklahoma Supreme Court cases and to one Tenth Circuit case applying Oklahoma law in support of its position that "Oklahoma has a long history of acknowledging that lost profits are" -- or, at least, can be -- "direct damages[.]" In its Reply Brief, Penn Square cites to a case from another jurisdiction stating, "In essence, consequential damages are economic losses, such as lost profits." However, Penn Square has not cited to any Oklahoma authority in support of this argument and, in Oklahoma, lost profits may constitute direct damages. See Florafax Int'l, Inc. v. GTE Mkt. Res., Inc., 1997 OK 7, ¶ 26, 933 P.2d 282 (Lost profits are recoverable in a breach of contract case, among other things, "if the loss flows directly or proximately from the breach," and "loss of profits . . . is generally considered a common measure of damages for breach of contract, it frequently represents fulfillment of the non-breaching party's expectation interest, and it often closely approximates the goal of placing the innocent party in the same position as if the contract had been fully performed." (citations omitted)). Moreover, here, the limiting phrase in the parties' contract is "indirect or consequential damages," not just "consequential damages," and this language follows language in the contract, quoted at greater length above, providing, among other things, that Penn Square agrees not to waive liability for damages sustained by Abercrombie resulting from Pen Square's negligence. Thus, even assuming the "indirect or consequential damages" limitation applies to Abercrombie's negligence claim, we conclude the trial court did not err in instructing the jury to award lost profits that "have occurred directly or proximately" as a result of the negligence. More fundamentally, however, we conclude, as set forth above, that the language in question does not unambiguously and clearly signal an intent to restrict tort recovery and, thus, we conclude it does not apply to the jury's award of damages for negligence.

 

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1975 OK CIV APP 9, 538 P.2d 217, CHASE v. PAUL HOLT DRILLING, INC.
Discussed at Length
 2017 OK CIV APP 51, 404 P.3d 885, SWEETEN v. LAWSON
Discussed
 2017 OK CIV APP 64, 406 P.3d 1064, COMBS v. WEST SILOAM SPEEDWAY CORP.
Discussed
 2018 OK CIV APP 44, 417 P.3d 1282, AMERICAN ENERGY -- PERMIAN BASIN, LLC v. ETS OILFIELD SERVICES, LP
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1939 OK 475, 97 P.2d 768, 186 Okla. 330, OKLAHOMA NATURAL GAS CO. v. PACK
Discussed at Length
 1990 OK 77, 795 P.2d 516, 61 OBJ 2093, Wofford v. Eastern State Hosp.
Discussed
 2001 OK 21, 24 P.3d 834, 72 OBJ 640, DIGITAL DESIGN GROUP, INC. v. INFORMATION BUILDERS
Discussed
 1997 OK 7, 933 P.2d 282, 68 OBJ 306, Florafax International, Inc. v. GTE Market Resources, Inc.
Discussed
 2001 OK 92, 40 P.3d 1051, 73 OBJ 878, CORMAN v. H-30 DRILLING, INC.
Discussed
 2002 OK 11, 54 P.3d 100, 73 OBJ 560, FIRST NATIONAL BANK IN DURANT v. HONEY CREEK ENTERTAINMENT CORP.
Discussed
 1969 OK 113, 459 P.2d 858, HALL JONES OIL CORPORATION v. CLARO
Discussed
 2003 OK 35, 67 P.3d 339, FINNELL v. JEBCO SEISMIC
Discussed
 2004 OK 36, 92 P.3d 88, ESTATE OF HICKS v. URBAN EAST, INC.
Discussed
 1996 OK 29, 912 P.2d 871, 67 OBJ 873, Schmidt v. U.S.
Discussed
 2007 OK 2, 154 P.3d 1250, ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.
Discussed
 2009 OK 56, 212 P.3d 731, WILSON v. WEBB
Cited
 2012 OK 21, 292 P.3d 10, JAMES v. TYSON FOODS, INC.
Discussed
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Discussed
 2018 OK 12, 412 P.3d 1151, GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.
Discussed at Length
 1997 OK 142, 949 P.2d 676, 68 OBJ 3827, CNA INSURANCE CO. v. KRUEGER, INC.
Discussed at Length
 1981 OK 148, 639 P.2d 1228, Keel v. Titan Const. Corp.
Discussed
 1983 OK 100, 681 P.2d 67, Lewis v. Farmers Ins. Co., Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 109, Limitation of Action to Recover Damages Arising from Design, Planning or Construction of Improvement to Real Property
Cited
 12 O.S. 2001, Scope of the Oklahoma Pleading Code
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA